TRUSTEES INTERNAL IMPROVEMENT FUND, APPELLANT, VS. WILLIAM BAILEY, APPELLEE.

1. Under the Constitution of Florida, the Legislature are prohibited from exercising any power properly belonging to the Judicial Department; therefore where the Legislature passes an act, the provisions of which are clearly and manifestly an exercise of power properly belonging to the Judiciary, it is unconstitutional.
2. The directing a rehearing by legislative enactment of a case decided in this Court, is the exercise of a power properly belonging to this Court.
3. After a judgment of this Court is enrolled and the term passed at which it was pronounced, the power of the Court over the record cases, and the judgment cannot be recalled or vacated.

The Court having declared itself competent to hear the motion pending in this cause for docketing and rehearing the same according to the act of the Legislature, the next question submitted for consideration was the constitutionality of the act directing this application for a rehearing.

*Thos. Baltzell* submitted the following argument in favor of the constitutionality of the law:

The counsel of General Bailey, not content with except-

ing to the law itself, has indulged in remarks condemnatory of the Legislature for passing it. I am not here to apologize or make excuses for them, by no means. That body, if anything of the kind is required, will make these to the people—to their constituents—never to a co-ordinate department of the Government, whose only concern with the law is to ascertain its legality and to yield a willing obedience to it.

The unusual character of its provisions, when considered with ordinary legislation, may require an explanation which, it is conceived, will at once show not only the propriety but absolute necessity of its adoption.

The law to facilitate the construction of the St. John's and Indian River Canal, entitled by the Internal Improvement law to a participation in that fund, by common consent of the entire Legislature, required repeal—the scheme having been ascertained to be a failure, and the money and lands appropriated improvidently wasted. The Lower House passed a law to that effect. The Committee of the Senate, in considering the subject, had their attention attracted to the opinion of the Supreme Court, which contained a declaration that the work was about being completed—"*that the Canal was rapidly opening.*" Now, obviously, this was inconsistent with the very foundation and base upon which the law was being passed. Again: they were made aware of the fact that an objection had been raised on the petition for a rehearing to the competency of the Judges who decided the case, to which no reply had been made, and every presumption existed that the objection had been rightly taken. Hence, the Legislature directed the Attorney General " to file an application before the Supreme Court for a rehearing in the case of the Trustees of the Internal Improvement Fund vs. William Bailey, before a *competent tribunal ;* or by bill or otherwise, to be

filed by him, shall come before a competent tribunal to have the questions in the above case settled, and the questions arising out of this act in reference to the Indian River Canal."

The investigation had by the Court, on the present occasion, of the question as to the competency of the Judges, is, to that extent, a vindication of the propriety of that provision. It is objected that, in other respects, the law is *ex post facto* and retrospective—violates the obligation of contracts, affects vested rights, and is a direct assumption by the Legislature of judicial power. The most of these questions have been disposed of in that great forum of the intellect, power and ability of the late American Union—the Supreme Court of the United States—after full argument and discussion by the most distinguished lawyers of the Bar from different States, by Webster, Binney, Sergeant, Johnson, and others —decided by the Court after mature consideration and a full survey of the subject in all its bearings—decided not once, but again and again—so that the simple duty remains to present a reference to these decisions.

The great case, directing a retrial, was before the Supreme Court of the United States, in 1796—that of Bull vs. Calder —and upon this state of facts: Probate of a will was presented and refused on the ground of its invalidity. The Legislature of the State (Connecticut) passed a law setting aside this decree, and granted a rehearing with liberty of appeal in six months. A new hearing was had, under which the will was established, and this confirmed by the Supreme Court of the State, from which the case was taken to the Supreme Court of the United States.

As to the objection that it was an *ex post facto* law, the Court say: "The prohibition to pass these was not inserted to secure the citizen in his private rights of either property or contracts; the plain and obvious meaning and intent of

the provision was that the Legislatures of the several States shall not pass laws after a fact done by a citizen, which shall have relation to such fact, and shall punish him for having done it. Laws that make an action, innocent when done, criminal, and punish such action—that aggravate a crime, or make it greater than it was when committed—that inflict a greater punishment than when the crime was committed —that alter the rules of evidence and receive less or different testimony than the law required, when the offence was committed, to convict the offender—these are *ex post facto* laws."

. As to the vesting of a right, the Chief Justice says : " I cannot agree that a right to property vested in Calder and wife, in consequence of the decree disapproving of the will. If the will was valid, Mrs. Calder could have no right, as heiress of Morrison ; but, if the will was set aside, she had an undoubted title. The law, alone, *had no manner of effect on any right whatever vested in Calder and wife.* The law, combined with the new hearing and the decision in virtue of it, took away *their right to recover the property in question.* But, when combined, they took away *no right of property vested in Calder and wife,* because the decree against the will did not vest in or transfer any property to them." In a previous part of the opinion, he had said : " A right, therefore, only to recover property, cannot be called *a perfect and exclusive right.*"—3 Dallas, 394.

A more recent case was decided by the same tribunal, in 1850, presenting the like objections. The case was that of an inquisition of damages by the Baltimore and Susquehanna Rail Road Company, which, not being directly carried out, the Legislature interfered and directed another assessment, which was had, and complained of by the Company as interfering with their rights under the first assessment. In their remarks, the Court say : to make the act unconsti-

tutional, as divesting vested rights and impairing the obligation of contracts, "it must certainly be shown that there was a *perfect investment* of property in the plaintiff in error by contract with the Legislature, and a *subsequent arbitrary divestiture of that property* by the latter body." After setting forth the proceedings, with the act of the Legislature: "We think this interposition in no respect impaired or contravened the contract alleged to have been previously existing—that it is perfectly consistent with all its conditions, and leaves the parties precisely as they stood from the passage of the charter, and at full liberty to insist upon whatever rights or interests that law had granted. *It divested no rights of property*, because, as we have shown, none had been vested. This intervention was simply the award of a *new trial* of the proceedings under the inquisition, which were of no avail, as if a judgment, after such new trial, was allowed." Again: "That there exists a general power in the State Governments to enact retrospective or retroactive laws, is a point too well settled to admit of a question at this day. The only limit upon this power in the States by the Federal Constitution, and, therefore, the only source of cognizance or control with respect to that power existing in this Court, is the provision that these retrospective laws shall not be such as are technically *ex post facto*, or such as impair the obligation of contracts."—10 Howard, 400.

The cases of Waterson vs. Saterlee, and Watson vs. Mercer, decided by the same Court, are to the same effect.

In the former case, a party had recovered judgment in ejectment, under a law of Pennsylvania declaring that "the relation of landlord and tenant could not exist between persons holding under a Connecticut title." Immediately after this decision, the Legislature of that State enacted that "the relation of landlord and tenant should exist and be held as fully and effectually between Connecticut settlers and Penn-

sylvania claimants as between other citizens of this Commonwealth." On a further trial of the case, the Court decided that "this law affected the rights of the parties," and, consequently, a verdict and judgment were given for the adverse party. This law was complained of "as divesting vested rights and impairing the obligation of contracts—as an unwise and unjust exercise of legislative power—as retrospective in its operation—as the exercise by the Legislature of a judicial function, and as creating a contract between parties where none previously existed." But the Court thought otherwise, both the Supreme Court of Pennsylvania and that of the United States.—2 Peters, 408; see, to the same effect, in same book, the case of Wilkinson vs. Leland, page 627, argued by Mr. Wirt and Mr. Webster; and 10 Peters, 294.

Watson vs. Mercer was the case of recovery in ejectment for want of informality of a conveyance by a *feme covert*, based on which there were two recoveries in ejectment. The State Legislature passed a law that "no deed, &c., of a *feme*, executed bona fide, &c., shall be deemed invalid by reason of any informality or omission to set forth the particulars of the acknowledgment, &c." The adverse party instituted an ejectment under this new law and recovered, thus defeating the former recovery, and it was sustained by the Supreme Courts of Pennsylvania and of the United States.—8 Peters, 91.

To the same effect was the case of Carpenter vs. the Commonwealth of Pennsylvania, in 1854.—17 Howard, 460.

The most important decision, however, of that tribunal, upon these questions, was that of Livingston vs. Moore—being an appeal from the Circuit Court of the United States for Pennsylvania, in which the action of the State Legislature was assailed as being against the Constitution of that State as well as of the United States, and was argued by

Messrs. Ingersoll and Taney for plaintiffs, and Messrs. Binney and Sergeant for defendant, during the time of Chief Justice Marshall. It is especially interesting as disposing of the objection on the score of the usurpation of judicial power by the Legislature, and other parts of the Constitution of the State of Pennsylvania.

The case involved title to land sold by commissioners, *under process from the Governor*, as the property of J. Nicholson, a debtor of the State.

In reply to the objection that this was a judicial act, Judge Hopkinson, the able Judge of the District Court, says: "The position, that a Legislature cannot constitutionally perform a judicial act, is supported by no authority, nor has it any reason in public policy or convenience. On the other hand, it is contradicted by legislative usage and the highest judicial decisions. It is true the Constitution of Pennsylvania divides the powers of the Government under three general heads—Legislative, Executive, and Judicial—that it ordains the legislative power shall be vested in a General Assembly, that the supreme executive power shall be vested in a Governor, and that the judicial power shall be vested in a Supreme Court, &c. This, however, is only a declaration of the general system or theory of our Government, and was never intended to fix exact and impassable limits to each department. There are things necessary to be done in the administration of the Government, of a character so mixed and blended—partaking of the elements of all these divisions of power—that we could not know to which to assign it; it could not be exclusively claimed by either. If, however, the acts performed by the Legislature were clearly judicial, they are, therefore, not unconstitutional and void—so have the Supreme Court adjudged in several cases, at least in relation to the Constitution of the United States—so have the Courts of Pennsylvania repeatedly said, sitting under the

Constitution of Pennsylvania, and deciding upon acts of the Legislature partaking largely of judicial functions."—Appendix to cases. The Court, after most able argument and great consideration, held the law to be valid.—7 Peters, 549.

An eminent commentator on Constitutional law, treating on this subject, says : " If an act of the Legislature, in terms, judicially determines a question of rights or property as the *basis* upon which the act is founded, so far the act must be regarded as a judicial act and repugnant to the Constitution. But if the act simply authorizes the doing of an act, with the view of attaining a given end or accomplishing a particular result, without a determination of the fact of the existence of that which secures to a party a right to the fruits of the act, such an act is not liable to this constitutional objection."—Smith's Com. Const. law, p. 347. Again : "Where a legislative act does not, in any manner, determine any matter of fact or of right dependent upon matters of fact, such an act is not liable to an objection that it is the exercise of judicial powers. This principle has been recognized in many adjudged cases."—Ibid, page 504, sec. 351.

The learned author of Commentaries on American Law, says : " A retrospective statute, affecting and changing vested rights, is very generally conceded in this country as founded on unconstitutional principles, and consequently inoperative and void ; but this doctrine is not understood to apply to *remedial statutes,* which may be of a retrospective nature—provided they do not impair contracts or disturb absolute vested rights, and only go to confirm rights already existing, and, in furtherance of the remedy, by curing defects and adding to the means of enforcing existing obligations."—1 Kent's Com., 455.

Judge Story, in his commentaries, gives this view of the subject : " Retrospective laws are, indeed, generally unjust, &c.; still, are left open to the States according to their own

Constitutions. There is nothing in the Constitution of the United States which forbids a State Legislature from exercising judicial functions, nor from divesting rights vested by law in an individual, provided its effect be not to impair the obligation of a contract, &c. And yet the powers of the Federal Government were confided, as in the States, to a Legislature, Executive, and Judiciary."—3 Story's Com., 267.

It remains to apply the rules and principles thus established to the case of Bailey; and, to do this, the true nature and character of his suit with the Trustees requires to be clearly ascertained and defined.

Bailey held $30,000 of bonds, the interest of which, payable in thirty years, he insists was secured by the Internal Improvement fund of twelve and a half millions of acres of land, the title to which was invested in the Trustees. He makes no complaint that any part of this sum, either principal or interest, was due or unpaid—only *fears* that if any of it be appropriated to the Apalachicola river, or to reclaim the swamps on its banks, (say $20,000 or even $100,000,) that this would diminish his security.

There was no proof of deficiency or prospective diminution. The Court, however, assumes it, saying: "We are inclined to think, from the figures before us, that no money can be spared at present from the Internal Improvement fund for other purposes than those indicated in the act of 1855;" and, therefore, they enjoin the payment complained of.

Bailey asked for no decree for money nor land, and none was made in his favor; only asked that no money nor land should be given to his adversary, and none was given. The right given to him by the decree was to prevent the donation to the city—this, and this alone. There was, then, no obligation impaired—no right, vested in either party, which was divested by the law declaring a rehearing—"no matter

of fact, nor of right, nor property, judicially determined by it as a basis upon which an act was founded; but only to confirm rights already existing, and, in furtherance of the remedy, by curing defects and adding to the means of enforcing existing obligations."

The validity of the law is admitted by the investigation now being made, as to the competency of the Judges who decided the case—a duty omitted when the decision was made.

Beyond this, I hold it clear and incontrovertible that it is the duty of an appellate tribunal to consider, investigate, and dispose of all the questions presented by the case, and which are material and of the essence of the controversy. As this was not done, as is very clearly shown by the opinion itself, and the argument submitted to the Court on the other point, I hold it the undoubted, the unquestionable right of the Legislature to interfere in every case, whether great or small, to grant a rehearing, so that the points at issue may be disposed of. In such a case, there is no decision, and the principal important duty of the Court remains to be discharged.

I maintain, then, that the law of the Legislature, in question, is not an exercise of judicial power—divests no right of General Bailey—impairs no contract of his—determines no question of fact, of right, or property in reference to him; and, in all respects, was an unquestionable act of legislative duty and power.

*M. D. Papy* against the motion.

FORWARD, J., delivered the opinion of the Court.

The Court having at this term decided that the Chief Justice and Associate Justice Walker were qualified in law to hear and determine this motion, or any of the questions

248       SUPREME COURT.

Trustees Int. Imp. Fund vs. Wm. Bailey—Opinion of Court.

arising in said cause, the said motion was argued, and, the Court having considered the same, deliver the following opinion :

The history of the action of this Court in said cause is stated in the decision of the Court on the question of the disqualification of said Judges, and the question now presented is, whether the Court will docket said cause and grant the rehearing asked in said petition? In the argument, it is contended on the part of William Bailey, the appellee, that the act of the Legislature which directs the Attorney General to file an application before the Supreme Court for a rehearing in this case is a legislative interference with the Judicial Department of the State, or in violation of the 2d article of the Constitution, which declares " the powers of the government of the State of Florida shall be divided into three distinct departments, and each of them confided to a separate body of magistracy, to wit : Those which are legislative to one, those which are executive to another, and those which are judicial to another.

" No person, or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances expressly provided in this Constitution ; " and that, as a consequence of the exercise of said power, the said statute, by directing the Attorney General as aforesaid, seeks to take away the vested rights of the said William Bailey by providing for the revision of a judgment of this Court in his favor, and in this way impairs the obligation of the contract.

In support of the application, it is contended that said provision, requiring the Attorney General to make the same, is not the exercise of any power prohibited by the Constitution, nor the seeking to divest any of the vested rights of said William Bailey, and cites the following cases as sustaining the legislative provision, to wit :

Baltimore and Susquehanna Railroad Co. vs. Nesbet et al., 10 Howard U. S. Reports, page 395; Calder and wife vs. Bull and wife, 3 Dallas, 386; Sattarlee vs. Mathewson, 2 Peters, 381; Wilkinson vs. Leland, 2 Peters, 627; Same vs. same, 10 Peters, 295; Lessee of Livingston vs. Moore and others, 7 Peters, 469; Watson and others vs. Mercer, 8 Peters, 88.

The application to this Court for rehearing is not made, by either of the parties to this suit. On the contrary, the Attorney General expressly informs the Court, that he makes the application, "*not as the Attorney of the appellants, but solely in obedience to the said act of the General Assembly.*" Herein it is an anomaly and unlike any cases presented, and without parallel in all the adjudicated cases, in this particular, which we have been able to find. For all the Court knows the parties to the suit are satisfied with the decision of the Court. No complaint is heard from them, or either of them. No application is made by either of the parties; the presumption is that they are content, and the question in the above case, so far as the parties thereto are concerned, are settled. But the Legislature, it seems, were not satisfied. They seem to have arrived at the conclusion that the questions therein were not settled. In order that they may be settled to the satisfaction of the General Assembly, they employ new counsel, by directing the law officer of the State to interpose by application for a rehearing, or by bill or otherwise, and to do this before a competent tribunal. It will be noticed the Legislature have not granted the rehearing, or directed the Court to grant it, nor does it confine the Attorney General to an application for a rehearing; but it is left to that officer, in exercise of his own judgment, to proceed, either by bill, application for rehearing, or otherwise, as he may deem best. Had the act of the Legislature directed a rehearing, the hearing of the case would necessarily carry

with it the right to set aside the judgment of the Court, and there would be unquestionably an exercise of judicial power. It is argued, however, by the Solicitor for appellee that the directing of the Attorney General to take steps in the suit which had been decided, and virtually making a new party thereto, was the exercise of a power properly belonging to the judicial department, although it does not dictate what the Court shall do or grant the rehearing.

In a case where " the exercise of power by the Legislature properly belonging to the judicial department is clear and manifest, there is no doubt it would be incumbent upon this Court to declare it a violation of the Constitution.

The Legislature, under this provision of the Constitution, may pass an act which is ministerial and simply remedial of an existing right, which may not amount to the exercise of judicial power, which was the act of the Legislature in Pennsylvania in the case of Lessee of Livingston vs. Moore and others.

It is a great blessing to us as a people that we have a *written Constitution*, in which the powers of the Government are divided and a prohibition is put upon the exercise or usurpation of any of the powers properly belonging to either of the other. The framers of the Constitution of Florida, doubtless, had in mind the omnipotent power often exercised by the British Parliament, the exercise of judicial power by the Legislature in those States where there are no written Constitutions restraining them, when they wisely prohibited the exercise of such powers in our State.

That Convention was composed of men of the best legal minds in the country—men of experience and skilled in the law—who had witnessed the breaking down by unrestrained legislation all the security of property derived from contract, the divesting of vested rights by doing away the force of the law as decided, the overturning of solemn decisions of the

Courts of the last resort, by, under the pretence of remedial acts, enacting for one or the other party litigants such provisions as would dictate to the judiciary their decision, and leaving everything which should be expounded by the judiciary to the variable and ever-changing mind of the popular branch of the Government.

To prohibit the exercise of such power in this State, they provided that the judiciary department shall not exercise any power properly belonging to the legislative department, nor the Legislature any power properly belong to the judicial department.

Under such provisions, the rights of property are not solely dependant on the will of the legislative body, without any restraints. Their province is to set the machinery of the rights of property in motion, but they have not the power of determining those rights. The latter is left to the judiciary, who are independent of the other branches of the government.

No Court of justice in this State would be justified in assuming that the power to violate or disregard the sacredness of private rights or private property—a power so repugnant to the common principles of justice—could be derived under any grant of legislative authority.

The Legislature assume, in said 8th section of said act, that the questions in the case of the Trustees of the Internal Improvement Fund, vs. William Bailey were *not "settled."* How or by what means they arrived at that conclusion, this Court does not know, nor has it any right to know, but we feel bound, in justice to the Court, to say, that each and every of the questions presented by counsel were carefully, attentively and thoroughly considered, discussed and decided, as far as they could be between the parties to that suit, which fact will appear to any one who will take the pains to read the opinion of the Court.

This brings us to consider whether the granting by the Legislature of a rehearing in a case decided by an appellate Court is the exercise of a power properly belonging to the judiciary ?

In the first place, let us see where the right of a rehearing of a cause in this Court is derived. Is it from any act regulating judicial proceedings, or is it derived from the exclusive favor of the Court.

In the practice of Courts of Equity in England and in America, a distinction exists as to the allowance of a rehearing between the Courts of *original* jurisdiction and those exercising *appellate* jurisdiction only. In the House of Lords, in England, to which the appeal lies from the Court of Chancery, a rehearing is altogether unknown. In the Court of Equity in Florida, which is a Court of *original* jurisdiction, it is provided by statute and by the rules of equity in the Circuit Courts of the United States, which we have adopted, that rehearings shall be granted. It is in those Courts a matter of right resting in the discretion of the Court, subject to appeal, and thus they are almost uniformly allowed. But in the Supreme Court, which is a Court of appellate jurisdiction only, the Court cannot be compelled to rehear—the rehearing is only authorized by rule of Court, and seldom allowed. Such is the rule adopted by the Supreme Court of the United States.

In the case of Brown vs. Aspden, 14 Howard, 25, it was held that the rules of the English Court of Chancery, in respect to rehearings, had not been adopted by that Court; that they were applicable to a Court of original jurisdiction, and were not appropriate to an appellate Court.

Chief Justice Taney, in delivering the opinion, after alluding in forcible terms to the natural result of this practice in that Court, of producing enormous expenses and delays, oftentimes ruinous to suitors, proceeds to say : "If this

Court should adopt a practice analogous to that of the English Chancery, we should soon find ourselves in the same predicament; and we should be hearing over again, at a second term, almost all the cases which we had heard and adjudged at a former one, and upon which our own opinions would have been definitely made up upon the first argument. We deem it safer to adhere to the rule we have heretofore acted on; and no reargument will be granted in any case, unless a member of the Court, who concurred in the judgment, desires it; and, when that is the case, it will be ordered without the application of counsel."

In this State, as we have already stated, it is by a rule of the Supreme Court a rehearing or application for rehearing is allowed. This rule provides that "Rehearings must be applied for by petition in writing within fifteen days after the judgment or decree, setting forth the cause or causes for which judgment or decree is supposed to be erroneous. The Court will consider the petition without argument, and, if a rehearing is granted, direct it as to one or more points, as the case may require." Rehearings, therefore, in this Court, are not authorized by statute, nor are they a matter of right, but rest in the sound discretion of the Court, and on such points as may be directed by them—therefore a power properly belonging to this branch of the Judicial Department.

The right of rehearing being derived from a rule of this Court, which is an appellate Court only, it follows that an act of the Legislature, directing a rehearing, is the exercise of a power properly belonging to the Judicial Department.

It is contended, however, that the case of the Baltimore and Susquehanna Railroad Co. vs. Nesbit et al., 10 Howard, is one directly in point and holds the act valid. It is true the syllabus or head note of that case does hold out the Court as having decided in general terms, "The States have a right to direct a rehearing of cases decided in their own

Courts." But, after careful examination of that case, we cannot think they intended laying down the rule of law in such broad terms. In that Court, the syllabus is made by the reporter and not by the Court, as in this State. As a *precedent* of an act of the State Legislature in awarding a new trial, where the retrospective law was not considered such as is technically *ex post facto*, or such as impair the obligation of contracts, they rely on the case of Calder and wife vs. Bull and wife, 3 Dallas, 386, and Watson et al. vs. Mercer, 8 Peters, 110. The question as to whether the act violated the constitution of Maryland, was not before the Court in the case in 10 Howard. The question there was, whether it was in violation of the Constitution of the United States, and the Court say, " the act of the Maryland Legislature, of December, 1841, simply ordering a new trial of the inquisition, does not fall within any definition given of an *ex post facto* law, and is not, therefore, assailable on that account."

Upon turning to the Constitution of Maryland, we do not find that its Legislature were restrained from passing said act, as in this State.

The 6th article of their Declaration of Rights reads, "that the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other." There was not added to this a provision similar to that in the Constitution of Florida. As we have already stated, the question whether said act was in violation of the Constitution of Maryland was not raised; and if it had been, we doubt if the decision would have been any different from what it was, for the reason the Legislature of that State were not restrained from exercising any such power. The case of Calder and wife vs. Bull and wife was a case from Connecticut, in which State there was not at that time any written Constitution or restraint upon such legislation.

In the case of Livingston, lessee, vs. Moore and others, the consideration of the Constitution of Pennsylvania, as to the powers of its Legislature, was before the Court; and the question was whether there was a constitutional restraint. The Court decided the Legislature were under no restraint.

Of all the cases cited by the learned counsel in this case, the case of Livingston, lessee, vs. Moore is the only one in which the State Constitution was considered. In all the others, the questions were whether the Constitution of the United States had been violated by the State Legislature. Did the syllabus in the case cited in 10 Howard represent that Court as having decided, the States *wherein there is no constitutional restraint* have a right to direct a rehearing of cases decided in their own Courts, we should agree with them. As it is, the question is upon the construction of our own constitution, which instrument, upon this subject, is clear and distinct, and means just what it says, to wit: The Legislature shall not exercise any power properly belonging to the Judiciary. It is important to keep up this line of demarkation in the different branches of the Government, otherwise the respective departments will often be in serious conflict, to the injury of the Government and country; and rights, once considered as sacred as justice itself, consigned to popular will and popular excitements.

This Court has always endeavored to act with the legal deference to a co-ordinate part of the Government, and at all times aimed not to tread upon the province of any of its powers. This principle we announced in the case of Cotten et al. vs. The Commissioners of Leon Co., 6 Florida, 613, wherein we say: "While it is an essential element in the character of an independent judiciary firmly to maintain and resolutely to exercise its appropriate powers when properly invoked, it is equally its duty to be careful not rashly and inconsiderately to trench upon or invade the precincts of the other departments of the Government."

With these views, we turn to the act of Assembly under which this application is authorized, to consider whether the directing of the Attorney General to take steps in the suit which had been decided was the exercise of a power properly belonging to the judicial department, and whether it impairs the obligation.

In an ordinary suit between two private parties, it would unquestionably be a very improper interference, to say the least of it. But in this case the Trustees, who are a party, are public officers. The trust committed to their charge is placed there by the General Assembly; their duties are defined; the objects of their trust are of the most public nature, to wit: internal improvements. The Legislature is their creator—they are responsible to them as well as to the *cestui que* trusts.

The Attorney General is the law officer of the State, and, as such, subject to the direction of the General Assembly, in the prosecution of all suits in which it is lawful for him to act. To him the Legislature look for legal advice and counsel.

Suppose it had come to the knowledge of the Legislature that the Trustees of the Internal Improvement Fund were miswaging a suit in which the fund was involved, and the trust would be perverted—in short, the objects of the trust were not likely to be carried out in consequence of their dereliction—would it not be proper and the duty of the Legislature to direct the action of the Attorney General in the matter?

Suppose a suit had been decided, in which the trusts delegated to the said Trustees were seriously affected, injured and perverted, would it not be proper legislation for the General Assembly to direct the Attorney—by bill or otherwise, in any legal way in which it can be done—if not in a rehearing between said parties, then by any other suit in

which said injury could be arrested? We think it would. Whether the Attorney General can by any act reach this suit, is another thing, and to be determined when application is made. So, whether the questions in this suit can be settled to the satisfaction of the General Assembly, will be a matter to be determined when the Attorney General institutes his suit by bill or otherwise.

It is argued that this act impairs the obligation of a contract, and thereby affects the vested rights of said William Bailey. If this is done at all, it is because it does away the force of the law as decided by the Supreme Court in this cause—that is to say, the right to have the judgment carried out. This it has not attempted by any express provision, and if any such result is likely to flow from it, then it will be time to consider whether the act directing it is unconstitutional or not.

Let us return to the motion to docket the cause. To docket the cause would imply there was such a cause in Court, and to entertain a rehearing would be a farce, unless the judgment entered on the 19th of April, 1862, (about one year and eight months ago,) was vacated or recalled.

In cases where application is made under the rule of Court, the judgment of the Court is not enrolled until the application is disposed of. In this case, the application was denied and judgment enrolled. The term of Court in which said judgment was entered has long since passed, and the question arises, can this Court recall or vacate said judgment? If this can be done now, it can be done twenty years from this time, and there is no telling when litigation would cease. The exercise of such a power, if it existed at all, would be the most uprooting and dangerous act ever exercised by any Court. No such power, however, exists. The judgment of this Court during the term in which it is pronounced, like any other order, may be vacated, corrected and changed.

But·after it is enrolled, and the term passed at which it was pronounced, the power of the Court over the record ceases and the judgment possesses a solemnity and sanctity which holds it sacred, and cannot be even appealed from, much less recalled.—Horn's Executors vs. Gartman, 1 Florida, 197; Bobb vs. Bobb, 2 A. K. Marshall, 240.

It is therefore ordered that the motion to docket this cause be denied.