LANGDON ELLIS *vs.* S. B. SMITH—SAME *vs.* RUTH SMITH.

[MOTION TO QUASH FI. FA. AND ENTER SATISFACTION.]

1. *Confederate treasury-notes; payment in.*—A payment in Confederate treasury-notes of a probate court money-decree, made by the party against whom the decree was rendered, to the judge of said court, is not a valid payment, or satisfaction of said decree.

2. *Presiding judge; interest which will disqualify.*—The interest which will disqualify a judge to sit in "any cause or proceeding," under section 635, (560,) Revised Code, must be a direct and immediate interest in the "cause or proceeding."

3. *Probate judge; question of qualification.*—A probate judge, who received from a guardian, against whom a decree had been rendered in his court, Confederate treasury-notes, and gave a receipt, as judge, for the same, "in full payment of said decree," is not incompetent, from interest, to preside on the trial of a motion made by said guardian to quash a *fi. fa.* afterwards issued upon such decree, and enter satisfaction of the same, on account of the Confederate treasury notes paid to, and receipted for by said judge, as aforesaid.

APPEAL from Chambers Probate Court.

NOTE BY THE REPORTER.—These two cases are almost identical in their facts and the questions of law which they present, and were heard and decided at the same time in the Supreme Court, by consent. A statement of one case only is, therefore, here set out.

THIS was a petition for a *supersedeas*, by Langdon Ellis against Simeon B. Smith. Said petition addressed to John Appleby, probate judge of Chambers county, is in these words:

"The petition of Langdon Ellis, respectfully states to your honor, that on or about the 11th day of January, A. D., 1864, your petitioner made a final settlement of his guardianship, of the estate of Simeon B. Smith, before your honor's court; which settlement was made according to law, and in which it was found, that your petitioner was

indebted to Simeon B. Smith, in the sum of $1,774.69 dollars ; and the court being satisfied that the said Simeon B. Smith was then over the age of 21 years, it was ordered and decreed, that the said Simeon B. Smith do have and recover of your petitioner, the said sum of $1,774.69 dollars.

"Your petitioner further states, that then and there, to-wit, in the probate office of said county, on the 11th day of January, 1864, your petitioner paid, and delivered to your honor, the sum of ?$1,774.69 dollars, the amount due said Simeon B. Smith, from your petitioner, as his guardian, in payment and satisfaction of said decree, and that your honor received said sum of money, to-wit $1,774.69 dollars, in payment of said decree, and gave an official receipt as such, which said sum of money so received, was assets, and all the assets in the possession of your petitioner's hands, belonging to the estate of said Simeon B. Smith." The petition then goes on to state, that notwithstanding the foregoing facts, a *fi. fa.* had been issued upon said decree, against him for the amount thereof, and concludes : "Now, therefore, your petitioner prays that a *supersedeas* may be issued by your honor, to said sheriff, commanding him to stay further proceedings on said *fi. fa.* until the facts of this petition can be inquired into by your honor's court, and your petitioner then prays that said *fi. fa.* may be quashed, and that satisfaction of said decree may be entered," &c. A writ of *supersedeas* was accordingly issued, and the parties afterwards came to trial upon a motion by said Ellis to have satisfaction of said decree entered. On this trial it was proven, that on the same day upon which the final settlement was made by said Ellis, and a decree for $1,774.69 rendered against him, and in favor of said Smith, that said Ellis paid, or delivered to the probate judge, John Appleby, the said sum of $1.774.69 dollars, and all costs, in Confederate States treasury-notes, and that, thereupon, said judge—who is the same person that presided at this trial—executed and delivered to said Ellis a receipt for the same, in the words and figures following, to-wit :

"Received, January 11th, 1864, from Langdon Ellis,

guardian of Simeon B. Ellis, minor, one thousand seven hundred and seventy-four 69-100 dollars, in full payment of a decree this day rendered against him, in a final settlement of his said guardianship of said minor.

(Signed.)         JOHN APPLEBY, Judge of Probate."

It was also proved, that at the time said payment was made to, and accepted by said judge, Confederate treasury-notes were the only money or currency in use or circulation in said county of Chambers, or in Alabama, and that such notes did circulate and pass as money in the State and community generally, and by general consent.    These notes were kept by said judge until about the 16th March, 1864, when they were taken by said Ellis, at the request of said judge, as the friend of said Smith, but not in the capacity of guardian, to a Confederate depository, and there funded in the name of said Smith, in what was known as four per cent. certificates, under an act of the Congress of the Confederate States.    It was also proved, that after the said Ellis had filed his account and vouchers for a final settlement of his guardianship, and before the same had been made, or decree rendered, the said Smith and his attorney went into the office of said judge, and examined said account and vouchers, and thereupon determined not to object to, or contest the same, but, at the same time they told, and instructed said judge not to take Confederate treasury-notes for what might be due to said Smith, from said Ellis, as guardian, or decreed to him on said settlement.    It was also shown that at the time of said payment to said judge, the depreciation of Confederate treasury-notes, as compared with coin or gold, was as 21 to 1.   The foregoing, in connection with the several opinions delivered, will sufficiently elucidate the questions of law decided in the case.

The probate court, at the final hearing, overruled the motion to quash the *fi. fa.* and to enter satisfaction of the decree against Ellis, and dismissed the *supersedeas.*   From this decision of the court Ellis appealed, and here assigns for error, the said action of the probate court.

RICE, SEMPLE & GOLDTHWAITE, for appellant.
W. H. BARNES, *contra.*

BYRD, J.—These cases present the same questions, and
upon the authority and reasoning of the following adjudi-
cations, we must affirm the decision of the probate judge in
each case :—*Bobo et al. v. Thompson,* 3 Stew. & Porter, 385 :
*Randolph v. Ringgold et al.,* 5 Eng. (Ark.) 279 ; *Trumbull v.*
*Nickolson,* 26 Ill. 149 ; *Cook & Lampkin v. Bloodgood,* 7 Ala.
683 ; *Armstrong v. Garrow,* 6 Cow. 465 ; *Catlett v. Alexander,*
4 How. (Miss.) 404 ; *Morton et al. v. Walker,* 7 ib. 554 ;
*Gasquet et al. v. Warren et al.,* 2 Sme. & Mar. 514 ; *Wood et*
*al. v. Robinson, Ex'r.,* &c., 3 ib. 271 ; *Ankeletons v. Torrey,*
7 ib. 467 ; *Anderson v. Carlisle et al.,* 7 How. (Miss.) 408 ;
*Hevener v. Kerr,* South. (N. J.) R. 58 ; *Coxe v. State Bank,*
3 Hals. 172 ; 13 Mass. 235 ; *Moody v. Mahurin,* 4 N. H.
296 ; *Sinclair v. Piercy,* 5 J. J. Mars. 64 ; *West, Oliver &*
*Co. v. Ball & Crommelin,* 12 Ala. 340, and the case of *Chap-*
*man, Lyon & Noyes v. Cowles,* decided at the June term,
1867, of this court.   As the counsel for the parties do not
raise the question upon their brief, of the competency of
the judge of probate to try the issue joined in these cases,
we will not express any opinion thereon.

Although the court may have erred in its rulings on the
exclusion or admission of evidence, yet as it is manifest
from the uncontested testimony, that the appellant can
never succeed in his motion, we will not review the excep-
tions as to those rulings.

. Affirmed.


. BYRD, J.—An application has been made for a re-
hearing in these cases, and it is predicated on the ground
that the court did not pass upon the question of the com-
petency of the judge of the probate court to hear and
decide them ; and that the judge was interested, and there-
fore the decision made by him is void and should be re-
versed.

The Code, (§ 560,) provides that " no judge of any court,
chancellor, county commissioner or justice, must sit in any
cause or proceeding in which he is interested," &c.   We

are satisfied that the judge was not interested in the "cause or proceeding" within the meaning of the statute. And in support of this opinion we cite the following authorities: *Peck et al. v. The Freeholders of Essex*, Spencer's R. (N. J.) 457 ; *Thomas et al. v. The State*, 5 How. (Miss.) 20 ; *Com. v. Ryon*, 5 Mass. 90 ; *Commissioners, &c. v. Lytle*, 3 Ohio, (Ham.) 289 ; *The Board of Justices v. Fennimore,* Coxe's (N. J.) R. 190 ; *Lyon v. The State Bank*, 1 Stew. 442 ; *Cranch v. Castleberry*, 23 Ala. 85 ; *Heydenfelt v. Towns et al.*, 27 Ala. 423.

This question must often become an embarrassing one to a judge. For if he is competent, and transfers the cause to the register in chancery, under §§ 808 and 2302 of the Revised Code, the subsequent proceedings by the register would be held void. And if the judge is incompetent from interest, his action, if he proceeds with the cause, would also be void under the provisions of the statute. It devolves upon him to decide the question ; and if he decides to retain jurisdiction, the interests of society and the presumptions to be indulged in favor of judicial integrity, would require us to affirm his decision, *unless* it is *clear* to us that he is interested in the cause or is otherwise incompetent. If he should transfer the cause, his action, for the same considerations, should not be reversed and the proceedings before the register held void, *unless* it clearly appeared that the judge of probate was not interested.

In the case of *Peck et al. v. The Freeholders of Essex, supra,* Carpenter, J., delivering the opinion of the court, said : "The interest which will disqualify a judge must be direct and immediate, and not remote and contingent. Any other construction would be harsh, constrained and technical ; and would, without any just reason, merely throw impediments in the way of suits, and unnecessarily embarrass the administration of justice ;" and further : "It is a reasonable intendment, upon the words of this statute, that the interest to disqualify a judge should, if minute, at any rate be direct and immediate."

The reasoning employed by this court in the case of *Gaines v. Harvin*, 19 Ala. R., on another question, but cog-

nate to this, should have some force and consideration with us, in a case of doubt and difficulty.

It results that the application for a re-hearing must be refused.

JUDGE, J.—I fully concur in what has been said by my brother Byrd, in response to the application for a re-hearing of these cases; but the zeal with which the application is pressed by the learned and able counsel for the appellants, and in consequence of some additional suggestions furnished by one of the counsel for our consideration since the main argument in behalf of the application was submitted, it is deemed proper to take further notice, briefly, of the question of interest of the judge of probate in the matters of litigation which came before him for adjudication.

The judge had the power, under our statute, to receive payment of the final decrees rendered against the guardian ; and on receiving payment thereof, became liable to pay over the money to the person entitled thereto, on demand. Revised Code, § 793.

But the judge's power to receive payment of the decrees was restricted, as against the plaintiffs in the decrees, to the reception of *money*—such money, only, as the plaintiffs were bound to accept.—*Aicardi v. Robbins*, January term, 1868.

Having received payment in Confederate States treasury-notes, the plaintiffs, therefore, were not bound to accept them, in satisfaction of their respective decrees ; and each had two separate and distinct remedies for the enforcement of the right to have good money. One was to treat the payment to the judge of probate, as a valid satisfaction, and coerce the payment of good money by him ; and if this remedy had been adopted, the judge would have been estopped from making the defense, that he had not received good money in satisfaction. The other remedy was, the one which was pursued, viz : To repudiate the payment to the judge, and coerce a valid satisfaction out of the defendant.—*Aicardi v. Robbins, supra.* These remedies being *inconsistent, were not concurrent ;* but the *right of*

*election* existed as to which should be adopted; and the election to pursue one of them, necessarily amounted to an *abandonment* of the other. It follows that the course pursued by the plaintiffs respectively, relieved the judge of probate from all liability *to each of them,* on account of the payments by the defendant to the judge.

The only other liability the judge could be under, then, would be a liability to the defendant for the amount of the " *Confederate money*" paid by the defendant to the judge. As to this it may be said : *First.* No legal liability could possibly exist on account thereof, until a *demand* was made of the judge for this currency, of which there is no proof· *Second.* Were the Confederate States treasury-notes still in the possession of the judge? and if a demand of them had been made and followed by a refusal of the judge to pay or deliver them, still, no legal liability would be created against the judge thereby, for we judicially know such notes to be *valueless.* *Third.* The payment of said notes into the " depository office" of the Confederate States at Atlanta, (with the exception of a small amount,) as is shown by the records, respectively, was no conversion of them by the judge, *as against the defendant,* at a time when they were of some value ; *because the defendant participated in the act of thus disposing of said notes, and was the principal agent in its execution.* How, then, was the judge interested in the proceedings within the meaning of the statute ?

It must be borne in mind that in the present case the judge was not called upon to decide upon any question of *disputed fact,* the determination of which, one way or the other, would fix upon him, or exempt him from, liability. *There was no dispute as to the material facts,* most of which were proved by the defendant himself ; and the main duty of the judge was, to decide upon a *legal question,* presented by *uncontroverted facts,* the decision of which one way or the other, could impose upon him no legal pecuniary liability. And a *pecuniary interest* is the character of interest contemplated by the statute to disqualify the judge, when he is not related to either party within the fourth degree of consanguinity or affinity, or has not been of counsel in the cause for either party.—Revised Code, § 635.

If the foregoing be correct views of the question involved, it results that the application for a re-hearing is rightfully overruled; and the case of *Wilson v. Wilson*, 30 Ala. 655, is not believed to be in conflict with the conclusion here attained.