[L. A. No. 331. In Bank.—May 31, 1898.]

ALBERT MEYER, Respondent, v. CITY OF SAN DIEGO et al., Respondents; H. I. CAPRON et al., Intervenors and Appellants; R. NICCOLLS et al., Intervenors and Appellants. Consolidated with Case of SAN DIEGO WATER COMPANY, Appellant, v. CITY OF SAN DIEGO et al., Respondents.

JUDGE—INTEREST IN LITIGATION—ACTION TO ENJOIN MUNICIPAL BONDS—JUDGE AS TAXPAYER.—In an action against a municipality to set aside as illegal and void a contract between the city and a water company, involving the expenditure of a large sum of money to be obtained by the sale of the bonds of the city, which were to be paid, both as to principal and interest, by means of a special tax levied for a series of years upon the property within the municipality, and to enjoin the issuance and sale of the bonds to carry out the contract, a judge of the superior court, who is a taxpayer of the city, is "interested" in the litigation, within the meaning of section 170 of the Code of Civil Procedure, and disqualified from sitting or acting therein.

ID.—DISQUALIFYING INTEREST.—A judge is disqualified in any litigation where he has any certain, definable, pecuniary, or proprietary interest or relation which will be directly affected by the judgment that may be rendered.

APPEAL from an order of the Superior Court of San Diego County refusing to change the place of trial. E. S. Torrance, Judge.

The facts are stated in the opinion of the court.

L. L. Boone, for Appellants R. Niccolls et al.

Works & Works, and Trippett & Neale, for Intervenors and Appellants H. I. Capron et al., and for San Diego Water Co., Appellant.

Gibson & Titus, and Delmas & Shortridge, for Respondent Southern California Mountain Water Company.

William H. Fuller, for Respondent Albert Meyer.

H. E. Doolittle, and T. L. Lewis, for Respondents City of San Diego and Its Officers.

HENSHAW, J.—The plaintiff instituted an action against the city of San Diego, and against the Southern California Mountain Water Company, for the twofold purpose: 1. Of setting aside as illegal and void a contract between the city and the water company defendant, involving an expenditure of one million five hundred thousand dollars of the moneys of the city to be obtained by the sale of its bonds; and 2. To enjoin the issuance and sale of the bonds to carry out the contract.

The bond issue had been voted at a special election called under an ordinance submitting to the electors the proposition of incurring a bonded debt of one million five hundred thousand dollars "for the acquisition by said city, for the use of said city and of its inhabitants, of and from the Southern California Mountain Water Company, of a water right, reservoir sites, a meterhouse site and rights of way, and for the construction by said city of waterworks for the use of said city and its inhabitants."

The controlling acts under which the election was held and the bonds voted are the statutes relating to the issuance of municipal bonds for public improvements.    (Stats. 1889, p. 399; Stats. 1891, p. 132; Stats. 1893, p. 61.)    These acts prescribe not only the mode by which such indebtedness may be incurred, but ordain as well the limit of indebtedness, the character of the bonds, the rate of interest, and the place of payment.    They also enjoin upon the municipal authorities the duty of levying and collecting a special annual tax sufficient to pay interest and provide a sinking fund for the ultimate redemption of the bonds.

Plaintiff is a taxpayer of the city.    Other taxpayers were allowed to intervene in the cause.    The San Diego Water Company had instituted a similar suit against these defendants, and the actions were consolidated.

Before the trial there was presented a motion for a change of venue, upon the ground of the disqualification of Judge Torrance, in whose department the action was pending.    Grounds identical with those urged as disqualifying Judge Torrance were asserted to exist in the case of the other judges of the superior court of the county.

The affidavits used at the hearing show that the judge was the owner of real property situated and taxed in the city of San Diego for municipal purposes, and taxable for the payment of a

bonded indebtedness such as that the validity of which is a question in the case. It also was made to appear that the issuance of the bonds in controversy and the carrying out of the contract between the city and the defendant water company would necessitate a special tax for forty years and directly affect the value of all real property subject to it. Upon the other hand, a determination that the contract and proceedings were illegal would result in a decree enjoining the issuance of the bonds, and relieve all property within the municipality from the burden of the bond redemption tax.

The trial judge concluded that he was not disqualified, refused to grant the motion, and retained the action.

From this ruling and order the San Diego Water Company and certain intervenors prosecute their appeals.

By section 170 of the Code of Civil Procedure it is provided that no justice, judge, or justice of the peace shall sit or act in any action or proceeding to which he is a party, or *in which he is interested.* This is but an expression of the ancient maxim that no man ought to be a judge in his own cause, a maxim which appeals with such force to one's sense of justice that it is said by Lord Coke to be a natural right so inflexible that an act of parliament seeking to subvert it would be declared void. (Coke on Littleton, sec. 212.) It is a principle which finds expression in the constitutions of many of our states, which declare the right of a citizen to be tried by judges as free and impartial as the lot of humanity will permit. It is a principle whose strict observance is dictated both by natural justice and an enlightened public policy. For it is not enough that a judicial decision be sound. It is of next importance that the tribunal rendering it be free from the charge of interest or the taint of partiality, else public confidence will be destroyed and judicial usefulness gravely impaired.

But what is the *interest* which will disqualify? For it is manifest that just bounds must be set to the meaning of the word, since, if a judge be not disqualified, it is as much his duty to retain the action as it is to remove it when the recusation is well founded. (*Heinlen v. Heilbron,* 97 Cal. 101.)

In the oft-quoted case of *Hesketh v. Braddock,* 3 Burr. 1856, the interest imputed to the jurors, and to the officer who returned them, rested upon the fact that they were members of

the municipal corporation which was seeking to recover a penalty due. The whole penalty was but five pounds, yet the proceeding was quashed by the court of king's bench, Lord Mansfield saying: "The law has so watchful an eye to the pure and unbiased administration of justice that it will never trust the passions of mankind in the decisions of any matter of right. . . . . There is no principle in the law more settled than this, that any degree, even the smallest degree, of interest in the question depending, is a decisive objection to a witness, and much more so to a juror, or to the officer by whom the juror is returned. If, therefore, the sheriff, a juror, or a witness be in any sort interested in the matter to be tried, the law considers him as under an influence which may warp his integrity or pervert his judgment, and therefore will not trust him. The minuteness of the interest won't relax the objection, for the degrees cannot be measured. No line can be drawn but that of a total exclusion of all degrees whatsoever." But this, it should be noted, is rather a declaration of the principle than a definition of the disqualifying interest, and while in terms this case does not include the judge as coming within the principle of disqualification, it is not to be doubted that it applies with equal strength, and with more reason, to such an officer. (*Dimes v. Grand Junction Canal Co.*, 16 Eng. L. & Eq. 63.) The disability of a witness to testify because of interest induced great hardship and led to many absurdities. Thus, one was not debarred from being a witness if it was determined that his interest was equally balanced, nor was the heir apparent to an estate incompetent to testify in support of the claim of his ancestor, though his expectation of inheriting might be immediate and well nigh certain. Again, the interest of a parent in a child, or of the child in the parent, was not a disqualifying interest, but only such as to affect the credibility of the witness. The injustice and hardship of the rules as to witnesses soon became so apparent that by statute it was entirely abrogated, and now no interest disqualifies a witness, its sole effect being to impair his credit.

In the case of jurors, however, who are judges of the fact, and of the magistrates, judges, and justices who are judges of the law, and frequently both of the law and facts, there has been far less relaxation of the principle, and this, if for no other reason, because the courts themselves, in their desire to preserve the

administration of justice free from the taint of unfairness, have inclined to a strict enforcement of the principle, and also because there are well-defined limits to the power of the legislature, should it ever seek to overthrow so salutary a rule.

Thus, in *North Bloomfield etc. Co. v. Keyser*, 58 Cal. 315, this court, citing section 170 of the Code of Civil Procedure, declares that the provision should not receive a technical or strict construction, but rather one that is broad and liberal, and quotes with approval the language of the supreme court of Michigan in *Stockwell v. Township Board*, 22 Mich. 350, to the following effect: "The court ought not to be astute to discover refined and subtle distinctions to save a case from the operation of the maxim, when the principle embodied bespeaks the propriety of its application. The immediate rights of the litigants are not the only objects of the rule. A sound public policy, which is interested in preserving every tribunal appointed by law from discredit, imperiously demands its observance." And in *Heilbron v. Campbell* (Cal., Dec. 28, 1889), 23 Pac. Rep. 122, it is said again by this court: "It should be the duty and desire of every judge to avoid the very appearance of bias, prejudice, or partiality, and to this end he should decline to sit . . . . in any case in which his interest in the subject matter of the action is such as would naturally influence him either one way or the other."

Upon the latter proposition, that of the power of the legislature to modify or abrogate the rule, statutes have been passed and upheld by the courts which remove the disqualification of jurors and of judges who are merely corporators of a municipal corporation and taxpayers therein, which corporation is a party interested. These statutes have been countenanced by the courts upon the ground that the interest of the juror or judge is so remote, trifling, and insignificant, that it may fairly be supposed to be incapable of affecting the judgment or of influencing the conduct of the individual. It is to be remembered, however, that they are in derogation of the common-law rule, and it will always be a judicial question, as to any particular statute, whether or not by its terms or in its effect it violates this fundamental principle of judicial decision. Thus Judge Cooley: "But, except in cases resting upon such reasons, we do not see how the legislature can have any power to abolish

a maxim which is among the fundamentals of judicial authority. The people of the state, when framing their constitution, may possibly establish so great an anomaly, if they see fit; but, if the legislature is intrusted with apportioning and providing for the exercise of the judicial power, we cannot understand it to be authorized in the execution of this trust to do that which has never been recognized as being within the province of the judicial authority." (Cooley's Constitutional Limitations, 6th ed., 508.) The only other exception to the operation of the maxim is that which arises in the nature of the government of the state, and has its existence in absolute necessity. Thus, to illustrate, where the legality of a bonded indebtedness of the state comes before its tribunals, they must act, or the right remain forever without the possibility of its enforcement. In such cases, however, the judges are as fair and impartial as the lot of humanity doth permit, and trial before such is all that the constitution, or Lord Coke's *jus naturae*, can preserve to any man.

It has been pointed out that in most of the states the common-law rule disqualifying a juror for interest by reason of the fact that he is a corporator of the city or town which is a party to the suit has been changed by statute, and that these statutes have been upheld by the courts upon the ground of the remoteness and contingency of the interest. In our own state, section 602 of the Code of Civil Procedure declares the grounds upon which challenges for cause may be taken, and subdivision 5 provides as a ground of challenge "interest on the part of the juror in the event of the action, or in the main question involved in the action, except his interest as a member or citizen of a municipal corporation." Nothing herein expressly removes the disqualification of the judge, which alike with that of the juror existed at common law. But, if the interest of a juror so situated is too remote to disqualify him as a trier of fact, equally, it may be argued, would a like interest be insufficient to disqualify a judge, and thus without express statutory enactment upon the question, the conduct of judges in trying actions where the sole ground of their disqualification is the fact that they are corporators and taxpayers of the municipal corporation which is a party thereto, has always been countenanced and upheld. Yet here it may be remarked that the state is not without some stat-

utory enactments upon the question. Many may be found conferring upon municipal courts and the judges therein jurisdiction of petty offenses for the violation of ordinances and for the collection of revenues under such ordinances. It has never been, and at this day may not be, seriously questioned that a judge of such municipal court is not disqualified by reason of interest merely because of the fact that he is a member and taxpayer of the municipal corporation, either in civil cases where its ordinances are under consideration, or in criminal cases where the penalties, fines, and forfeitures for the violation of such ordinances accrue to the municipal treasury.

In a very great number of the cases which have come under review in the consideration of this question nearly all have to do with the interest of the judge or juror as a member of such public corporation, and in these, where the ancient rule has not been modified by statute, that rule is for the most part observed in all its strictness. Of these cases there may be cited as instructive upon the question: *State v. Stuart*, 23 Me. 111; *State v. Woodward*, 34 Me. 293; *Commonwealth v. Ryan*, 5 Mass. 90; *Pearce v. Atwood*, 13 Mass. 324; *Trustees v. Bailey*, 10 Fla. 238; *Moses v. Julian*, 45 N. H. 52; 84 Am. Dec. 114; *Northampton v. Smith*, 11 Met. 390; *Foreman v. Marianna*, 43 Ark. 324; *Peck v. Essex*, 21 N. J. L. 656; *Sauls v. Freeman*, 24 Fla. 209; 12 Am. St. Rep. 180; *Commonwealth v. Reed*, 1 Gray, 472; *Ellis v. Smith*, 42 Ala. 349; *Fine v. St. Louis Public Schools*, 30 Mo. 166; *Stockwell v. Township Board, supra; Fiske v. Paine*, 18 R. I. 632; *Dimes v. Grand Junction Canal Co., supra; Oakley v. Aspinwall*, 3 N. Y. 547.

In *Northampton v. Smith, supra*, Chief Justice Shaw, with his usual clearness, has defined this disqualifying interest. He says: "1. We think it is not to be a mere possible, contingent interest, not an interest in the question or general subject to which the matter requiring adjudication relates, but one that is visible, demonstrable, and capable of precise proof. . . . . It must, therefore, depend upon facts capable of being precisely averred and proved, and thus put in issue and tried. 2. It must be a pecuniary or proprietary interest, a relation by which as debtor or creditor, an heir or legatee, or otherwise, he will gain or lose something by the result of the proceedings, in contradistinction to an interest of feeling or sympathy or bias which

would disqualify a juror." (It may be here remarked to prevent misunderstanding, that by an amendment to section 170 of the Code of Civil Procedure bias or prejudice upon the part of the judge is now made a ground of disqualification, and a reason for the amotion of a cause.) "3. It must be certain, and not merely possible or contingent. It must be direct and personal, though such a personal interest may result from a relation which the judge holds, as the member of a town, parish, or other corporation, where it is not otherwise provided by law, if such corporation has a pecuniary or proprietary interest in the proceedings."

Thus the interest which one has in a public question merely because he is a member of the civic body to be affected by the question is not the interest which the law has in mind. In the case from which we have just quoted, the judge in probate was not held to be disqualified because in a will before him there was a bequest of money to trustees to be devoted to the use and benefit of indigent persons in certain towns, of one of which the judge was an inhabitant. So in *Foreman v. Marianna, supra,* the judge, who was an inhabitant of the town, was not for that reason held to be disqualified to sit in and determine upon proceedings for the annexation of territory to the town, although an election had been called to pass upon the question of annexation and the judge had voted thereat. And so in *Sauls v. Freeman, supra,* the fact that the circuit judge, with other registered voters of the county, had signed a petition addressed to the county commissioners, asking for a change of the county site, did not disqualify him for interest from sitting in a *mandamus* proceeding to compel the commissioners to call an election upon the question. In these and like cases the so-called interest of the judge is found to be remote, doubtful, and speculative, and in no way certain in fact, nor susceptible of precise measurement.

But, upon the other hand, where in any litigation there is any certain, definable, pecuniary, or proprietary interest or relation which will be directly affected by the judgment that may be rendered, in every such case without exception, so far as an exhaustive examination of the authorities goes, the disqualification of the judge is held to exist. Has the judge any pecuniary or personal right or privilege directly affected by or immediately

dependent upon the result of the case?  As that question is answered, so is answered the question of his disqualification for the interest which we have been considering.  In *Heilbron v. Campbell, supra,* the action was between divers claimants to a tract of land to which the judge himself asserted title.  The judge was not a party to the suit, nor would the judgment rendered be binding between him and the other litigants.  Yet this court in Bank held the interest to be disqualifying; and properly so, for though, generally speaking, an interest in the legal question, as distinguished from a pecuniary interest in the result of the case, is no valid ground of disqualification, there is to this the well-settled exception that where the judge has a lawsuit pending or impending with another person, which rests upon a like state of facts, or upon the same point of law as that pending before him, this is a valid ground of recusation.  (*Davis v. Allen,* 11 Pick. 466; 22 Am. Dec. 386; *Moses v. Julian, supra.*)

In *North Bloomfield etc. Co. v. Keyser, supra,* the action was by the city of Marysville to restrain the mining company from prosecuting its hydraulic work because the effect of its mining operations was to injure the lands of the corporation.  The judge owned land, not within the municipality, but similarly situated and equally affected by the mining operations complained of. In an action for an injunction by the city against the mining company, it was held that the judge had such a direct and immediate interest in the result of the action as to disqualify him.

Even more immediate and direct is the interest of the judge in the case at bar than that which appeared in the North Bloomfield case.  The disqualification does not spring from the fact that the judge is a citizen, inhabitant, and taxpayer of the city of San Diego, nor yet from the fact that the municipality is a party litigant in the action.  It arises from the circumstance that he owns property within the city which may or may not be liable for the burden of a special tax for the period of forty years, as he shall decide.  The validity of this tax is directly called in question.  The judge himself, under the circumstances shown, could have instituted as plaintiff this identical action. "The rule is well settled that where the parties interested are numerous, and the suit is for an object common to them all, some of the body may maintain a bill on behalf of themselves and of

the others." (Story's Equity Pleading, secs. 97, 98; 1 Freeman on Judgments, sec. 178; *Brown v. Trousdale*, 138 U. S. 389; *Gamble v. San Diego*, 79 Fed. Rep. 487.) He would have been entitled to intervene as well as those who in fact have intervened. The judgment which he renders in the case will be binding upon his rights and his property. His interest is in the outcome of the litigation, and it is a direct, measurable, pecuniary interest.

The distinction between this case and that of *Oakland v. Oakland Water Front Co.*, 118 Cal. 249, is readily to be observed. Here, as has been said and shown, the judge is to decide directly whether or not property which he owns shall be made subject to the burden of a special tax. In the Oakland waterfront case the city sought to recover lands which had been granted to it by the state under certain trusts. Even if the city succeeded, it was at least doubtful whether the control of these lands would result in profit or loss to its finances. It was still more doubtful whether their management would affect the tax rate of the city in the slightest degree. The judge had no other interest in the litigation than that which he possessed in common with other citizens, and which arose from the fact that he was an inhabitant and taxpayer of the city. It was not a direct, measurable, or pecuniary interest in the litigation or its outcome. The interest was remote, contingent, and speculative. It might thus be fairly stated: If the city recovered the property, and if it successfully managed or sold it, the result might be to lessen the rate of taxation, and thus under all these contingencies to reduce in some slight indeterminate and undeterminable extent the tax rate upon the judge's property. Clearly, such a remote and contingent interest is readily to be distinguished from that in the case at bar, where the judge in a cause directly involving the legality of a tax imposed and to be imposed upon his land does by his *ipse dixit* declare whether the burden shall remain or be removed.

In *Austin v. Nalle*, 85 Tex. 520, the question of the interest of the judge under circumstances identical with those of the case at bar was presented, and the court reached the conclusion here declared. The same principle was invoked and the same ruling made in *Wetzel v. State*, 5 Tex. Civ. App. 27, and again in

*State v. Cisco* (Tex. Civ. App., Nov. 30, 1895), 33 S. W. Rep. 244.

It is urged that the case of *Wade v. Travis County,* 72 Fed. Rep. 985, is authority against this position. This is in a measure true. It was an action in the circuit court of the western division of Texas, and the question of the disqualification of a federal judge by reason of his pecuniary interest under facts similar to those here presented was considered by the court. Its decision upon the proposition is in the following language: "Authorities examined by the court leave the question in some doubt, and, for the purpose of having it definitely determined by an appellate tribunal, we have concluded to hold that that disqualification on the part of the district judge does not exist, and we suggest to counsel the propriety of preserving proper exceptions in order that the point may be conclusively settled by the court of appeals." It may be conceded that so far as it goes this case is against the conclusion which we have reached; but it should be said in this connection that it is the only case of its kind, and, as appears from the language of the learned judge, he decided as he did only in order that the question might be definitively laid at rest by the appellate tribunal.

As it is uncontradicted in this record that the same disqualification which existed in the case of Judge Torrance existed as to the other judges of the superior court of the county, it follows from what has been said that the motion for change of venue should have been granted.

The order is therefore reversed.

Garoutte, J., Temple, J., and Beatty, C. J., concurred.

Harrison, J., dissented.

McFARLAND, J., concurring.—I concur in the judgment of reversal. I also concur generally in the opinion of Mr. Justice Henshaw, except that I desire a little more pointedly to emphasize the distinction between the case at bar, and a case where a city in which the judge is a taxpayer is a party, and where there is merely a possibility that a judgment against the city might result in an increased levy of taxes, and a judgment in favor of the city might bring about a reduction of taxation. In the lat-

ter case—and in others that could be mentioned where a similar principle applies—the interest is too shadowy, indirect, remote, and contingent to be within the rule that a man cannot be a judge in his own case.    (See *Dallas v. Peacock*,  89 Tex. 58; *Oakland v. Oakland Water Front Co.*, 118 Cal. 249, and cases there cited.)    But in the case at bar the interest of the judge was not indirect, remote, or contingent; it directly involved the immediate imposition of a special annual tax upon his property to continue for forty years.

VAN FLEET, J., dissenting.—I dissent.    The case is not to my mind distinguishable in principle from that decided in *Oakland v. Oakland Water Front Co.*, 118 Cal. 249, where it was held that the trial judge was not disqualified.    The interest of Judge Torrance in the subject of litigation is not different in kind, however much it may differ in degree, from that possessed by the trial judge in that case.

In my judgment the principle announced in the opinion of the court is one susceptible of indefinite extension, to the great detriment of the practical administration of justice; and the application of which to the facts of this case is, I think, opposed by the weight of modern authority.

Rehearing denied.