NICHOLLS, C. J.
Petitioner alleged that it is proceeding to build a line of railroad from Stamps, Ark., through various parishes of Louisiana, and through Rapides parish, into Alexandria, La., and that, as a necessary part of its right of way and terminal facilities in the city of Alexandria, certain property, together with- all buildings and improvements thereon,"belonging to M. C. Moseley, a resident of Rapides parish, La., are required to be expropriated and purchased by petitioner in accordance with the laws of Louisiana respecting compulsory sales for public purposes; said property being more particularly described as follows, to wit: (Giving description.)
Petitioner shows that said property is necessary for the work and purposes of petitioner, to enable it to properly fulfill its functions in behalf of the needed public improvement; that petitioner cannot agree with the owner of said land to make an amicable purchase *393 thereof; that it is necessary to expropriate the same by judgment of this honorable court and according to law; and that petitioner has offered to tender to defendant more than the full and just price for said property, to wit, the sum of $2,700, for that first described, and the sum of $1,500 for that second described, which offer or tender has been peremptorily refused by defendant, said tender having been made, not as an admission that the said sums mentioned were the true value of the respective portions of property herein sought to be expropriated, but having been made with a view of amicable purchase and to avoid litigation, said sums being far in excess of the true value of said property.
In view of the premises petitioner prays that said needed lands as above described, together with all buildings and improvements situated thereon, all as designated on the plan hereto annexed, with the depth, length, and width therein expressed, be adjudged to petitioner, the Louisiana & Arkansas Railway Company, for its uses and purposes, upon payment to the owner of the value of said property and all such damages as he may sustain in consequence of the expropriation thereof as herein prayed for, and that the necessary order and notice to the said owner of said land and improvements thereon be indorsed hereon, and that the honorable court grant such orders for listing, drawing, and summoning a jury of freeholders to assess such damages as the owner may suffer, and the value of the lands and the buildings and improvements thereon herein prayed to be expropriated as may be necessary and proper in order to legally expropriate the same, and for judgment upon such verdict as may be rendered herein according to law, for costs, and such general, and special relief as the nature of the case may require.
Defendant answered, pleading first the general issue. He specially denied that there was any necessity for the plaintiff to have and to take away from defendant his ground, which plaintiff seeks to expropriate. He specially denies, further, that plaintiff needs as much as 150 feet in width for a right of ' way, when 50 feet would be amply sufficient; and he also specially denies that plaintiff needs at all the quarter of a square fronting on Third street, which is located 200 or 300 feet south of or below the Watkins right of way, and the plaintiff having already acquired a right of way ISO feet wide fronting on Third street, and now owning the lots bought from Mr. Plunket, and also those bought from Lurcey & Reason, all fronting on Third street, it already has amply sufficient ground for a depot, without taking away from defendant without his consent still more ground, and for which there is no such necessity as to justify an expropriation. 1-Ie further shows that on this quarter of a square, as well as on the other ground adjacent to Watkins Railway, defendant has a dwelling house, yard, garden, etc., and therefore said property is not subject to expropriation.
That the plaintiff is trying to force him to give up his property without giving him full value in compensation for same. That property in this city is, and has been for many years, and especially for the last few years, constantly rising in value. He further shows that even five years ago the Red River Valley Railway Company paid to Dr. Thompson and wife $5,000, which was $10,000 per acre, for one-half of an acre, and to Mr. Jonas Rosenthal and wife $5,000 for less than two-thirds of an acre, which was $8,250 per acre, and to this defendant $9,500 for 3% acres, which was about $3,000 per acre, and yet this plaintiff refused to pay to this defendant $6,000 for 2 acres, with dwelling houses on same, located in same part of the city, below the Southern Pacific Railroad, and even tried to make this defendant accept $2,700 for that part of the ground now sought to be taken by force, when it is well worth $6,000, besides *394 the injury to the adjacent part of the ground, by cutting it into a narrow strip and in the form of an acute angle, too narrow to build houses on same and shutting it off from any front, and almost destroying its value, then injuring defendant’s other property to the extent of $8,000, which said plaintiff should pay to defendant additionally. He further shows that the quarter of a square on Third street has one dwelling house on same, but is large enough for three of the kind now there, which rents for $15 per month, making the monthly rental $45 per month, or $540 per year, a sum to produce which would require $9,000 at interest at 6 per cent, or $5,750 at 8 per cent. Therefore this property, or one-fourth of a square, is worth at least $5,000, • and yet this plaintiff offered only $1,500 for it.
Defendant prays that plaintiff’s demands be rejected, and that there be no expropriation of defendant’s property, for the reason that it is not necessary, and for the further reason that, being dwelling houses, yards, gardens, etc., the property is not subject to expropriation; and, in the event that his property is taken away from him without his consent, then he prays that the plaintiff be required to pay him full value for same, and that he have in compensation $6,000 for the ground claimed for a right of way adjacent to the Watkins Railway, and $3,000 additional for the injury to defendant’s other property, and the sum of $5,000 for the quarter of a square fronting on Third street, the coming most important street of the city, already paved to the Yalley depot, on which the electric street cars are to run, aggregating'the sum of $14,000, with legal interest from judicial demand.
The jury before whom the case was tried returned the following verdict:
“We, the jury, find for the plaintiff and fix the value of the Third street property at eighteen hundred ($1,800) dollars, and of the acreage (1.41) property in the rear at twenty-four hundred and twenty-five dollars, in full settlement.
“[Signed] S. Warshauer, Foreman.”
The jury being polled, ten jurymen replied that the verdict returned was their verdict, while two replied that it was not.
The district court rendered judgment in conformity to the verdict, and defendant appealed.
While the jury in the ease were being impaneled, defendant challenged for cause L. A. Stafford and O. O. Gremillion, two of the jurors drawn to try the case. The court overruled the objection and a bill of exception was taken. The bill recites that:
“When these jurors were offered, they were asked if they had contributed to the citizen’s fund, the object of which was to raise a portion of the money necessary for the purchase of the right of way and terminals for the plaintiff company, and, when both answered that they had contributed $125 to said fund, defendant challenged both of the said jurors for cause. Having no peremptory challenge, when the court overruled the challenge, both of said jurors were sworn and served as jurors. The reason assigned by the judge for his ruling was that the jurors were unprejudiced and not interested in any personal way in the result of the controversy.”
Defendant cites Lewis on Eminent Domain, vol. 2, § 405, and cases cited in that connection.
Of the correctness of this hill, at the place referred to, Lewis declares that:
“Persons who are interested or active in promoting the work or improvement for which the condemnation is made are generally held to be disqualified from acting as jurors or commissioners.”
He quotes, in a footnote, Michigan Air Line Ry. Co. v. Barnes, 40 Mich. 383, and Kundinger v. Saginaw, 59 Mich. 355, 26 N. W. 634, but refers to Somerville v. Wimbish, 7 Grat. (Ya.) 205, as questioning this doctrine.
Plaintiff’s counsel urge that the interest which should disqualify a juror is the same which would disqualify a judge; that the interest which a judge may have in a case, in order to disqualify him, is not the kind of interest which one feels in public proceed *395 ings or public measures. It is a pecuniary or property interest, or one affecting tbe individual rights of the judge. The judge must have such an interest in the suit that, in the event of the decision, he will either gain or lose in a pecuniary way.
They refer the court to Ellis v. Smith, 42 Ala. 349, 353; Bennett v. State, 4 Tex. App. 72; Higgins v. City of San Diego, 58 Pac. 700, 702, 126 Cal. 303; Foreman v. Town of Marianna, 43 Ark. 324, 329; State v. Sutton, 74 Vt. 12, 52 Atl. 116; and Detroit Ry. Co. v. Crane, 50 Mich. 182, 15 N. W. 73.
Section 1481 of the Revised Statutes makes it the duty of the clerk of the court and the sheriff to select a list of 48 freeholders, residents of the parish in which the land lies and not interested in the issue to be tried, from which list 24 shall be drawn and summoned to attend, and from the 24 freeholders a jury shall be impaneled, in which at least three-fourths of their number shall concur, to determine after hearing the evidence what is the valúe of the land described in the petition with its improvements, and what damages, if any, the owner would sustain in addition to the loss of the land by expropriation. The section provides that in impaneling the jury any challenge for cause, but no peremptory challenge, shall be allowed.
The only knowledge we have of the facts which would go to show what interest the particular jurors named would have (and the extent of the interest) in the issues to be tried in the case is derived from the recitals of the bill. Whether any questions besides those which the bill discloses were asked of the jurors on their voir dire we do not know.
Appellant states in a motion for a new trial that counsel of the plaintiff pressed upon' the jury in their 'closing, argument that the suit was “not one by a corporation against a citizen, but a suit against an individual citizen by a committee of citizens who had granted to the corporation the right of way and terminal grounds at not more than $16,000.”
The new trial was refused, and no bill of exceptions was taken thereto, and therefore the facts stated in the motion for a new trial are not brought before us in a way which would authorize the, court to consider them.
The only fact upon which we can deal in considering the question of the competency is that these jurors “subscribed $125 to a citizens’ fund, the object of which was to raise a portion of the money necessary to purchase the right of way and terminals for the company.”
That fact indicates unquestionably .that they were much interested in the construction of the road, with its terminals, but does not of itself show any pecuniary interest in the road or its construction. The .exact character of the fund raised by the committee and the circumstances under which it is to be paid out are not disclosed. It is asserted that the committee of citizens, as an inducement to the railroad company to make its1 terminus in Alexandria, guarantied it that the termi-. nals in the town should not cost it more than $16,000, but that assertion is not made good by any evidence. As matters stand, we only know that the two subscribing jurors had subscribed $125 towards the purchase of the terminals. That amount would neither be increased nor lessened by the price which would have to be paid for any particular property. Their competency is dependent, therefore, upon the decision of the question whether the special interest which they have manifested in having the terminal of the road established in Alexandria furnishes a legal ground for challenging them on the ground of interest, in the sense of bias or partiality.
The wide scope given to the clerk and sheriff for the selection of jurors, the narrowness of the margin accorded to the owner for objection, and the great weight attached to the verdict of the jury, make it our duty to rigidly construe and enforce the requirements of the law touching the competency of jurors.
*396 We are of the opinion that the jury should be composed, as far as possible, of men not only without pecuniary interest in the object sought to be carried out, but also of men taking no special active steps towards its accomplishment. The owner is entitled to have his case submitted to a jury legally constituted.
For the reasons assigned it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is, hereby annulled, avoided, and reversed, the verdict of the jury on which it was based be set aside, the cause be reinstated on the docket of the district court, and it is now remanded to that court for further proceedings according to law; costs of appeal to be paid by the appellee.