[Crim. No. 3272.   Second Appellate District, Division One.—February 14, 1940.]

THE PEOPLE, Respondent, v. IGNACIO RODRIGUEZ et al., Defendants; LOUIS PANNER, Appellant.

Waldo & Waldo for Appellant.

Earl Warren, Attorney-General, and Bayard Rhone, Deputy Attorney-General, for Respondent.

DORAN, J.—Defendant, Louis Panner, appeals from a judgment of conviction, and from the order denying a motion for a new trial. It is contended by appellant that the evidence is insufficient and that the testimony of the alleged accomplice lacks corroboration.

The defendants, including appellant Louis Panner, were charged in an information filed by the district attorney, with the crime of conspiracy to commit robbery. As overt acts in furtherance of the conspiracy it is alleged that upon three different occasions, namely on January 26, February 11 and February 19, 1939, appellant furnished and gave to his alleged codefendants a revolver, an automatic pistol, and a Ford automobile, and it is alleged, further, as overt acts in furtherance of said conspiracy that upon three occasions, namely on January 27, February 12 and February 20, 1939, appellant's alleged codefendants committed the crimes of robbery.

A jury having been duly waived, the cause was submitted to the court upon the transcript of the evidence received at the preliminary hearing, supplemented by the testimony of additional witnesses.

■ It is conceded that the robberies were committed by appellant's alleged codefendants; it is also conceded that appellant's Ford automobile and a revolver belonging to appellant's father, and also an automatic pistol belonging to a friend of appellant, were used in the robberies. It is also conceded that appellant was not present and did not participate in any of the alleged robberies. Appellant was at no time accused, by information or otherwise, of the offense of robbery.

The robberies were committed in the city of Los Angeles. Appellant resides in Yucaipa, which is about seventy-five miles from Los Angeles, where he owns and maintains a peach orchard which he has operated since the year 1930. His brother, and apparently his mother and father, reside on the adjoining property. The record also shows that from time to time appellant worked for Beggs Brothers, commission merchants in Los Angeles. As appellant testified, he had been employed by the Beggs Brothers "between the time of taking care of the ranch", and he had sold his crops to the Beggs Brothers, or through them, all of the time that he had had the orchard.

Appellant had lent his Ford automobile shortly before the alleged robberies to one Harry Roper, who was originally charged with robbery together with appellant's alleged codefendants; Roper was thereafter discharged on a writ of *habeas corpus*. Appellant had also lent his car to one Maurice Stevenson, whom, according to his testimony, he had met in November or December of 1938, at the market, where Stevenson helped unload trucks. The acquaintanceship was apparently a very casual one. Some time around the 23d of January, 1939, Stevenson came to Yucaipa, and there saw appellant, in connection with which visit appellant testified as follows: "He (Stevenson) said there was a place down here on a construction job, he came up the valley and wanted to go down and try getting a job there. I told him I couldn't go at the time, I was pruning my orchard but he could take the car and to have it back inside of a week, as we were figuring on a road job up in Mill Creek Canyon and I needed the car then." Q. "What do you mean by a road job?" A. "We took a contract building a road up in Mill Creek Canyon . . . for a private party." Stevenson, one of the alleged codefendants, has not been apprehended.

It appears from the record that shortly before the car was lent to Stevenson, appellant and a neighbor of his at Yucaipa had been shooting at targets with their pistols, and the neighbor, Harry Miller, a rancher, and a resident of Yucaipa for twenty-seven years, had left the automatic pistol in appellant's car. Appellant, who testified at length, asserted that at the time he lent the automobile to the above-named individuals, he did not know that Miller's automatic pistol had been left in the car, and had also forgotten that his own revolver was there.

Although appellant was in Los Angeles at the time the robberies were committed, his testimony in substance was to the effect that he had come to Los Angeles merely for pastime, and had had no knowledge whatsoever of any contemplated robberies.

Aside from the foregoing, and details incidental thereto, there is no evidence in the record tending to establish appellant's connection with the alleged robberies or the alleged conspiracy, except the following: Appellant's alleged codefendant, Murel Carroll, who admitted participating in two of the robberies, testified that appellant made the remark in Yucaipa that he (appellant) "could bring his car and guns to Los Angeles and give them to two guys here who would take them and bring him in money". The witness was unable to account for the remark on any reasonable basis. Carroll testified, further, that, "The reason I am testifying now is because I figure that Lou Panner is trying to get me behind the bars". In explanation of this testimony the witness Carroll further testified, "Well, I meant that this Lou" (referring to appellant) "thought he would get rid of me. He likes Pauline pretty well himself". Thus it appears that a treacherous influence threatened Carroll's veracity.

Referring again to the pleadings, in addition to the overt acts above mentioned, namely, the furnishing by appellant of the automobile and the revolvers, it is alleged that in furtherance of the conspiracy, as other overt acts, certain defendants, excluding appellant, committed three robberies. Thus it is alleged and was proven at the trial that the objective offenses, namely robbery, contemplated by the conspiracy and for which purpose the defendants conspired, were in fact committed. It is true as a matter of law that the crime of conspiracy can be complete without the commission of the

objective offense; in other words, an overt act in furtherance of the conspiracy completes the offense, but such overt act need not be the objective offense contemplated by the conspiracy.

■ It appears timely that some consideration be given to the popular but erroneous belief that less convincing evidence is required to support a judgment of guilty where the offense of conspiracy is charged. Such a belief is wholly unwarranted. Moreover, to charge conspiracy produces no advantage for the plaintiff, nor does such a charge create burdens for the defendant, any different with regard to each than might be expected in connection with the trial for other offenses. The crime of conspiracy is no more heinous, nor is it fraught with graver consequences, than other offenses. Fancied handicaps incident to the prosecution of other offenses cannot be overcome in the trial of a criminal action by merely charging conspiracy. Relatively the same quantity and quality of evidence is necessary to support a judgment of conviction of the offense of conspiracy as of any other offense. Moreover, the same rules of evidence apply generally. Thus, in the case at bar, no advantage accrues to the plaintiff by accusing the defendants, and appellant, of conspiracy instead of the objective offenses alleged, namely, robbery. In the circumstances here presented, if the evidence is insufficient to sustain the judgment of conviction of robbery, it is insufficient to sustain the judgment of conviction of the offense of conspiracy to commit robbery.

■ At the conclusion of the trial, the judge presiding made the following observation: "I always approach a conspiracy case with a searching attitude of mind, because of the very nature of the charge and the presumptive rules of evidence—much testimony is considered which would not be considered in a charge of an isolated offense." And, upon disposing of the motion for a new trial, the following additional remark was made by the court: "I merely state that as a human situation with which I realize you are confronted, and I can only say in that connection that like all conspiracy cases the testimony may be not as fulsome and complete as is the case in any other offense but conspiracy."

Thus the trial judge clearly regarded the offense of conspiracy as different from other offenses. It does not appear just why a consideratoin of the evidence in a conspiracy ac-

tion should be approached with a "searching attitude of mind, because of the very nature of the charge", any more than in any other offense, nor does it appear what presumptive rules of evidence the trial judge had in mind; nor does it appear what testimony the court was under the belief could be considered in connection with the offense of conspiracy that could not be considered in the offense of robbery; nor does it appear why the testimony in a conspiracy action need not be "as fulsome and complete as is the case in any other offense but conspiracy". Had the cause been tried before a jury, and the jury instructed along the lines suggested by the remarks above quoted, such instructions clearly would have been reversible error. The guilt of the defendant was determined, nevertheless, by one with a viewpoint as to the law as above represented.

Relatively the same quantity and quality of evidence is required to overcome the effect of the doctrine of reasonable doubt where conspiracy is charged, as is required in any other offense; or, conversely stated, less evidence will not suffice to overcome the effect of the doctrine of reasonable doubt where the offense charged is conspiracy, than that which is considered necessary where other offenses are charged.

From a review of the record, the evidence falls far short of being sufficient to support the judgment as a matter of law. Conceding that an appellate tribunal is bound by the conclusions reached by the trier of facts where evidence is reasonably susceptible of two inferences, nevertheless, where the reason of a rule ceases, so should the rule itself (sec. 3510, Civ. Code); there is no reason for applying the above rule in connection with the disposition of the within appeal. The evidence relied upon by plaintiff to connect appellant with the alleged conspiracy is insufficient. The question is not whether the evidence of the co-conspirators is sufficiently corroborated, but whether there is sufficient evidence as a matter of law to connect appellant with the alleged conspiracy in the first instance.

For the foregoing reasons the judgment and the order denying the motion for a new trial, are, and each of them is, reversed.

York, P. J., and White, J., concurred.