[Crim. No. 3369.   Second Appellate District, Division One.— March 10, 1941.]

THE PEOPLE, Respondent, v. CARL JOHN GAERTNER et al., Appellants.

Cantillon & Glover for Appellants.

Earl Warren, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

DORAN, J.—Appellants herein appeal from an order denying their motion for a new trial made after a jury had found each of them guilty of a criminal conspiracy to commit petty thefts as charged in an indictment accusing appellants and other named defendants of the crime. After the verdict ap-

pellants applied for probation and the court ordered that proceedings in the case be suspended and granted appellants probation for a period of two years upon condition that appellant Gaertner serve the first six months of his probationary period in the county jail and pay a fine of $500 and that appellants Klavans and Gerde serve the first three months of their probationary periods in the county jail and each pay a fine of $200, and at the same time denied appellants' motion for a new trial as above stated.

Appellants, together with defendants Frank W. Barrett and William Davis, were arraigned on the indictment, and all entered pleas of "Not Guilty". During the course of the People's case the prosecution asked and was granted permission to dismiss as to defendant Barrett for the purpose of calling him as a witness on behalf of the People. The jury found defendant Davis not guilty of the crime charged.

The evidence offered in support of the charge reveals the following facts. Appellant Gaertner, with defendant Barrett and one other, organized and incorporated in California a corporation known as the American Safety First Association, which appears to have had for its general purposes the dissemination of information to the public as to the dangers inherent in the reckless operation of motor vehicles and the disregard of traffic signals and the violation of state, county and city ordinances enacted for the protection of the public, the establishment of classes for safety first education and the production of motion pictures dealing with safety first subjects, as well as dramatic and radio skits of the same nature, radio broadcasts, and such other measures as might from time to time be determined by the association suited to the protection of the public. In short, the corporation was formed for the avowed purpose of carrying on a campaign of education and publicity with a view to betterment of conditions caused by motor traffic. A few local judges became interested in the organization, undoubtedly because of the nature of its proposed work, and some of them permitted the use of their names upon a letterhead of the association, as members of committees or in similar capacities. The funds of the organization were raised through sale to the public of seals, similar in character to those sold at Christmas time by the associations engaged in combating tuberculosis. The seals were sold in sheets of 100 at $1 per sheet and bore the

slogan "Drive Carefully and Avoid Accidents". The seals were sold by solicitation over the telephone and the solicitation was made through salesmen hired for the purpose. These salesmen were largely obtained through help wanted advertisements in the newspapers, and worked in crews located in various hotel rooms from which the phone solicitations would be made. The salesmen were given specimen sales talks as a guide to use in soliciting. Seals were delivered and collections made by messengers. Over a period of approximately two years the organization obtained in excess of $19,000 by this method. During the same period a little over $900 was spent for radio broadcasts and in conducting a traffic school. The balance of the funds appears to have been applied to salesmen's and collectors' commissions and commissions of others in the organization, salaries and general overhead. Appellant Gaertner appears to have received the total sum of about $3,492.73 out of the fund during this period. Appellant Gaertner was a salesman by profession and had engaged in selling advertising and tickets for various organizations. It may reasonably be inferred from the evidence that in organizing and carrying on the work of the American Safety First Association appellants were not inspired by purely altruistic motives. Some thought was clearly given to the possibility of personal profit, or at least a means of livelihood.

In carrying on their phone solicitations there is evidence that the salesmen had misrepresented themselves, sometimes posing as judges or prominent citizens; and it appears that occasionally salesmen had represented that their services and the services of others in the association were being donated. The use of his name in such solicitations appears to have caused one of the judges to withdraw from the organization.

The theory of the prosecution was clearly that of obtaining money under false pretenses. It is stated in respondent's brief that the gist of the offenses charged against these three appellants was the conspiracy to take and the taking from the public at large of money in varying small amounts. Evidence was introduced at the trial in an effort to connect the defendants with the improper representations made by phone solicitors. It should be noted, however, that testimony to this end consisted largely of reported conversations had by the witnesses with various defendants and in

each case was admitted only against the particular defendant with whom the conversation was had, subject to a motion to strike the testimony in the event the prosecution failed to establish a conspiracy. At the close of the People's case defendants' motion to strike this testimony was denied.

There is no evidence that any of the defendants deliberately pocketed any of the funds of the association and the prosecution appears to have rested the case entirely upon misrepresentations made in soliciting funds and on the fact that so great a proportion of the funds was applied to overhead, salaries and commissions.

As to the representations made by the salesmen in soliciting funds, the only evidence tending to show that the representations were made as the result of any concerted effort on the part of appellants appears in the specimen talks or outlines furnished the salesmen as a guide for their phone conversations, which outlines were received in evidence on behalf of the People. However, the only statement contained in these outlines which could be construed as a misrepresentation of fact is one directing the salesman to state that he was serving on a committee with three Superior Court judges and the chairman of the American Safety First Association, who was a well known attorney. While it is true that the judges and the attorney named had all consented to act on committees of the association or to lend their names to such committees, a representation that the person making the phone call was working on such a committee would obviously tend to give the recipient of the call the impression that the person calling was one of some prominence in the organization and not merely a hired salesman working on a commission. From this it might be reasoned that the salesmen impliedly represented themselves to be donating their services to the cause and that by so holding themselves out to the public they in turn represented that all or the greater part of the funds received on the sale of the seals would be applied directly to the work for which the association had been organized, without reduction through payment of commissions. It is readily seen, however, that the evidence allows considerable room for a reasonable doubt that appellants intended to convey such an impression to the public. Moreover, it would be stretching the powers of deduction too far to infer from such evidence that there had been a misrepre-

sentation of the use to which the funds were to be put or a misrepresentation of the nature and purpose of the association; and it should here be pointed out that in order to prove these appellants guilty of the offense charged, under a theory of false pretenses, it would be necessary to show the commission of overt acts tending to misrepresent either the nature and purposes of the association in question or the use to which the funds of the association were to be put. Representations as to the identity of the salesmen and their connections, if any, with committees of the organization do not in themselves have such a tendency and, standing alone, are merely collateral and not material.

It is significant that the evidence most strongly tended to place responsibility for the salesmen's misrepresentations upon defendant Davis since it appears that the outlines in question were given out by him and that some of the improper statements were made by salesmen within his hearing, and the jury might have properly inferred that such statements were made with Davis' tacit consent and approval. Yet the jury exonerated defendant Davis of any complicity in the crime of which the defendants were accused. Appellants' connection, if any, with any such statements was considerably more remote than that of Davis. It should be noted that Davis appears to have been an employee in the organization in charge of telephone salesmen. However, no direct connection was shown between appellants and the misrepresentations made by the salesmen, other than that contained in the outline mentioned above, and no connection whatsoever was shown in this respect as to any representation that salesmen's services were donated.

But it is unnecessary to consider the evidence of a conspiracy in greater detail since the record fails in the first instance to show the commission of a theft, an attempted theft, or any overt act in furtherance of a conspiracy to commit theft. Appellants sold seals to the public at a penny a piece. These seals bore a salutary slogan and their suggested use was well calculated to create a beneficial psychological effect in a campaign to reduce traffic accidents. Furthermore, appellants represented that the proceeds from such sales were to be used in a plan of publicity and education relating to traffic problems. The money was so used, though the expense entailed proved disproportionate to the amount

taken in, a common failing of many charitable and civic enterprises. There is no evidence that appellants made any representation as to the percentage of the funds to be applied to expenses of the undertaking. It should also be pointed out that the persons buying the seals obviously must have intended to part with their money in exchange for the seals and that the price of the seals fairly represented their value in relation to the purpose for which they were sold. The organization appears to have kept a record of receipts and expenditures of funds, to have held meetings and kept minutes thereof. If there were any basis at all for an inference that there was a misappropriation of funds it would have to be found in the evidence of the expenditures made. However, this evidence fails to show that any of appellants received an exorbitant share of the funds from the standpoint of actual services rendered. The only fact established in this connection is that the expenses in general were too high for the amount received. Some three thousand dollars shown to have been paid to appellant Gaertner could not be held an unreasonable amount of compensation for his services over the period of two to two and a half years covered by the charge. It appears, therefore, that the money received on the sale of the seals was used as represented and that the misstatements and misrepresentations of the salesmen were at the most collateral and immaterial upon the question of a theft or overt acts in furtherance of a theft. There is no basis in the evidence for any inference that appellants were guilty of a theft, or even an attempt at theft of the money, as theft is now defined in the Penal Code, nor have appellants been shown to have committed any overt acts leading to the commission of a theft. As contended by appellants on their motion for a new trial, and on appeal herein, the court should have granted the motion of appellants for a new trial upon the ground of the insufficiency of the evidence to support the verdicts. (*People* v. *Cesena*, 18 Cal. App. (2d) 727, 729 [64 Pac. (2d) 732]; *People* v. *Bacos*, 14 Cal. App. (2d) 338, 349 [58 Pac. (2d) 221]. And see *People* v. *Rodriguez*, 37 Cal. App. (2d) 290 [99 Pac. (2d) 363].)

Appellants also assign as error the admission, over objection that it was hearsay, of testimony of a witness to the effect that on a certain date he received a phone call from a voice which stated that it was a certain judge, and

that the witness was thereby solicited to purchase seals of the American Safety First Association upon the representation that another judge, whose name was given, had suggested that the call be made; that the witness in response to the call purchased the seals in question through a messenger who delivered the seals and to whom the witness gave his check in payment. The witness then testified that when the check was later returned it bore the rubber stamp endorsement, "The American Safety First Association". Counsel then stipulated that the endorsement on the check was authentic. The objection in question was directed to the relation by the witness of the conversation had over the phone. From the résumé above given it may be seen that such testimony was not objectionable as hearsay and, if otherwise material, was admissible. Appellants base their argument as to this point on the ground that the identity of the person making the call was not established. However, the witness stated that the voice had represented itself to be that of a certain judge. Under the circumstances, it was no more necessary to establish the actual identity of the voice than it would have been for the witness to have established that of an unknown person who had accosted the witness on the street, held himself out to be a certain individual, and sold the witness the seals. The testimony given by the witness showed the circumstances under which he had purchased seals of the association and such testimony derived its value solely from the credit to be given the witness upon the stand. (See the definition of hearsay, 20 Am. Jur. 400, sec. 451; *idem* at page 403, sec. 454.) It was not claimed that the phone call was made by one of the appellants or any particular individual.

█ Testimony, admission of which is assigned as error, given by three judges of the Superior Court to the effect that they had not authorized the use of their names in telephone solicitations, was immaterial and improperly admitted. It has already been pointed out that such representations made by the salesmen in this case had no bearing upon the charge. It should be borne in mind that under the charge the only material representations could be those as to the nature and purpose of the organization and the use to which funds would be put. Whether or not a judge authorized the use of his name could have no possible bearing on the case and admission of the testimony here complained of was necessarily prejudicial to appellants.

Appellants also complain of the trial court's refusal to give a requested instruction to the effect that the rule in civil cases of the responsibility of a principal for the acts of his agent is not applicable to criminal cases. Some evidence, aside from that connected with defendant Davis, was allowed to stand as to misrepresentations made on the telephone by telephone salesmen. In view of the fact that this evidence was submitted to the jury, notwithstanding the apparent immateriality thereof, an instruction such as that requested might properly have been given (*People* v. *Doble*, 203 Cal. 510 [265 Pac. 184]), but since the court gave an instruction to the effect that in determining whether the respective defendants were parties to the conspiracy the jury had no right to consider against a defendant any declarations or acts made or done by any other person in the absence of that defendant, it is doubtful whether the failure to give the requested instruction constituted prejudicial error.

The order denying the motion for a new trial is hereby reversed.

York, P. J., and White, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 3, 1941.