[Crim. No. 910.    Fourth Dist.    Jan. 16, 1952.]

THE PEOPLE, Appellant, v. TROY RAYMOND PROCTOR, Respondent.

Edmund G. Brown, Attorney General, Frank Richards, Deputy Attorney General, James L. Davis, District Attorney, and J. Parley Smith, Assistant District Attorney, for Appellant.

Head, Jacobs & Corfman for Respondent.

MUSSELL, J.—The defendant Troy Raymond Proctor was accused in an information filed by the District Attorney of Orange County of the murder of one Dorothy Stewart Schindler. After the filing of the information, the defendant moved that it "be stricken under Penal Code section 995 on the ground that the defendant was committed without a showing of reasonable or probable cause." The People appeal from the order of the trial court granting defendant's motion and the only question presented is whether or not the defendant was committed without reasonable or probable cause.

The evidence at the preliminary examination upon which the order of commitment is based is as follows: Roger Burnham, a deputy coroner of Orange County, who was also an embalmer and mortician by profession, testified that as a part of his official duties he had occasion to inquire into the death of one Dorothy Stewart Schindler; that he examined the body and was present when several photographs of it were taken at the mortuary; that he observed the bruises shown in the photographs and that they appeared to be of recent origin; that there was found to be a "massive subdural hematoma, so-called, or a very enlarged clot in the brain on the left side."

A certified copy of a death certificate was admitted in evidence, which certificate contained, among other things, the statements that the name of the deceased was Dorothy Stewart Schindler, aged 37; that she was divorced; that she died about

10 a.m., August 25, 1951, at 114 22d Street, Newport Beach, Orange County; that the disease or condition directly leading to death was "Massive subdural hematoma, left cerebral hemisphere, due to trauma to the head"; that the injury occurred through external violence occurring on "8-24/25-1951." The certificate specified that the death was due to homicide. This document was signed by "E. R. Abbey, coroner, by R. S. Burnham, Deputy, on 8-26-51, by C. Lewis Baltz, embalmer on 8-27-51, and by Edw. Lee Russell, MD 1MA, local registrar, on 8-25-51."

A motorcycle officer, employed by the city of Newport Beach, testified that he went to 114 22d Street in Newport Beach on August 25, 1951; that he arrived at the apartment house at 10:51 a.m. and went to apartment No. 5, which was the apartment of the defendant Troy Proctor; that he found Dr. Tohill there and that the body of Dorothy Proctor was on the bed in the apartment; that he did not know who she was at that time but that the doctor told him it was Mrs. Proctor. The officer testified that photographs of the body were taken in his presence and that they were true representations of the appearance of the body and the scene at that time. These photographs were admitted in evidence. The officer also testified that he had a conversation with the defendant concerning the body on the bed; that the conversation occurred at about 11:20 that morning, in apartment No. 3 of the same building and that he, the defendant, Henry Goff and Mrs. Gould were present. The officer was asked to relate the conversation and an objection was interposed upon the ground that no corpus delicti had been established. The objection was overruled and the officer then testified as follows:

"I asked Mr. Proctor if he had struck his wife on the night previous and he said that he had. He said he pulled her from a couch to the floor and then he took her to his room and beat hell out of her. I asked him how many times he hit the woman and he said he didn't remember how many times he hit her." When asked if he had any conversation with the defendant concerning the time that the beating occurred, the officer stated that he (defendant) was uncertain as to the time, only that it was the night before.

The defendant contends that the death certificate was inadmissible as prima facie evidence of a homicide for the reason that the statement "homicide" is not such a fact as is

contemplated by Health and Safety Code, section 10551, which section provides as follows:

"Any photostatic copy of the record of a birth, death, or marriage, or a copy, properly certified by the State or local registrar to have been registered within a period of one year from the date of the event is prima facie evidence in all courts and places of the facts stated in it."

It is also contended that the death certificate is not prima facie evidence of a homicide for the reason that it fails to comply with Health and Safety Code, section 10427, which provides that:

"The coroner or other proper officer whose duty it is to hold an inquest on the body of any deceased person, and to make the certificate of death required for a burial permit, shall:

"(a) State in his certificate the name of the disease causing death, or if from external causes (1) the means of death; and (2) whether (probably) accidental, suicidal, or homicidal."

Both of these contentions are valid. The statutory requirement that a death certificate must include the word "probably" before the words "accidental," "suicidal" or "homicidal" clearly indicates the intent of the Legislature that only an opinion or conclusion as to whether or not a death is homicidal shall be stated. We conclude, therefore, that the objection to the introduction of the certificate in evidence to show that the death was "homicidal" should have been sustained.

However, the evidence (excluding the certificate) was sufficient to establish the corpus delicti for the purpose of introducing the statements and admissions of the defendant. As was stated in *People* v. *Bausell,* 18 Cal.App.2d 15, 19 [62 P.2d 774]:

"It is settled in California by a long line of decisions that to justify the reception of evidence of extrajudicial statements or admissions of a defendant the prosecution is not required to establish the corpus delicti by proof of the clear and convincing character which is necessary to support a conviction but that slight or prima facie proof of the corpus delicti is sufficient. (Citing cases.) It is also settled that the requisite preliminary element of corpus delicti may be proved by circumstances shown in evidence or by inferences drawn from proven facts. (Citing cases.) Direct or positive evidence is not essential. (Citing cases.)"

The evidence clearly supports a reasonable inference that the deceased died from a beating that was administered to her shortly before she was found dead in the defendant's bed

and that her death was not accidental or suicidal. Under the circumstances shown by the record, the motion of the defendant to set aside the information should have been denied.

The order is reversed.

Barnard, P. J., and Griffin, J., concurred.