[Civ. No. 8514. Third Dist. Oct. 27, 1953.]

ROBERT HALL et al., Petitioners, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent.

Peter Mannino, Edwin L. Z'Berg and Keith W. Lamb for Petitioners.

Edmund G. Brown, Attorney General, Doris H. Maier, Deputy Attorney General, and Elvin F. Sheehy, District Attorney, for Respondents.

SCHOTTKY, J.—Petitioners filed in this court a petition to prohibit the Superior Court of the State of California, in and for the County of Sacramento, from taking any further proceedings upon an information theretofore filed against petitioners. The said information charged petitioners with the crime of murder, and following a preliminary examination they were held to answer. They then entered pleas of not guilty and were tried in the superior court, which trial resulted in the jury's disagreeing. Thereafter, petitioners moved the trial court for leave to withdraw their pleas in order to move the court to set aside the information upon the ground that they had been illegally committed. Their motion to withdraw their pleas was granted and they then made a motion to set aside the information, which motion was denied by the court. Their pleas of not guilty were then reinstated, and the cause was set for trial for Wednesday, September 23, 1953. Within the statutory time petitioners filed herein their petition for a writ of prohibition and we issued an alternative writ and stayed further proceedings in the superior court pending the decision of this court upon said petition.

The principal contention of petitioners is that the proof at the preliminary examination failed to establish the corpus delicti of the offense charged, and that the defendants were held to answer without reasonable or probable cause, and therefore the information was illegal and void. Petitioners argue that the oral statements of the petitioners which were admitted against them at the preliminary examination, over the objections of petitioners, could have no weight because the corpus delicti had not been shown.

 It is, of course, elementary that before a defendant may be held to answer to the superior court it must appear from the testimony at the preliminary examination that a public offense has been committed, and as this court said in *In re Schuber*, 68 Cal.App.2d 424, at 425 [156 P.2d 944]:

"As stated in the case of *People* v. *Simonsen*, 107 Cal. 345 [40 P. 440]; 'It is elementary that the corpus delicti must be established before extrajudicial statements and admissions of a defendant are admissible in evidence, and can be considered as tending to establish the fact to which they relate.' That such is the overwhelming weight of authority in this country must be conceded. (*In re Kelly*, 28 Nev. 491 [83 P. 223].)

"While it is true that preliminary examinations of persons accused of crime when held before a committing magistrate are usually less formal in matters of procedure than would be required upon the trial of the cause the essential principles of procedure and of evidence may not be departed from by committing magistrates in the conduct of such examinations (*In re Williams*, 52 Cal.App. 566 [199 P. 347]), and although the committing magistrate may hold a defendant to answer upon evidence which would not support a verdict of guilty, nevertheless there must be some evidence tending to show the commission of the crime charged before a defendant's admission or confession can be introduced for any purpose. (*People* v. *Kaye*, 43 Cal.App.2d 802 [111 P.2d 679].)"

At the preliminary examination one Casimiro Brea, who occupied a cabin down on the river front in Sacramento, at which cabin decedent Rosario Gonzales, also resided, testified that decedent came home at 7:30 p. m. on the night of March 31, 1953; that he was in a very drunken condition, having been drinking for two or three weeks, but that the witness saw no bruises upon him; that decedent went into his room and Brea did not see him again until about 6 o'clock the next morning when, after preparing coffee, he called decedent, and

getting no answer went into decedent's room and found him dead in bed. Dr. G. A. Prisinzano performed an autopsy at 4 p. m. on the afternoon of April 1, 1953, and testified that the autopsy showed a ruptured liver with extensive internal bleeding, and that death was caused by the ruptured liver and the accompanying shock and internal bleeding. Analysis of the blood of decedent showed an alcoholic content of .310, and the doctor testified that this meant that the man was drunk when he died. The doctor testified further:

"Q. [Mr. SHEEHY] : And did you arrive at any conclusion as to the manner in which the injury had been received to that individual's liver? A. No, just speculation. There was no evidence of any bruises.

. . . . . . . . . . . . .

"A. Well, in my opinion since the body had no evidence of bruises or any other evidence of any—we had no history of any trauma of any sort, in my opinion such an injury could be caused by a blow whether it was a fist or a kick.

"Mr. SHEEHY : Q. But it was your opinion that it was received as a result of some blow of some sort, is that true? A. Yes."

The doctor testified further that in a man in the drunken condition that decedent was in, the abdominal muscles would be relaxed and that a blow delivered there could rupture the liver and cause the damage he found. He said there were no external bruises anywhere on the body which he would have expected to find had the ruptured liver been caused by falling or being struck by an automobile, and the like. He said however, that if falling or running into an object could simulate the force of a blow to the abdomen it could have the same effect, but that he deemed this rather far-fetched.

Officer Francis Gregory testified that on April 2d he began interviewing five boys whom the officers suspected of having beaten decedent. Counsel for petitioners objected at the preliminary examination to the court's receiving the extrajudicial statements upon the ground that the corpus delicti had not been proved, but said objection was overruled, and the officer testified that the story of the boys was that for about three weeks they had amused themselves by going down into the skid row section of Sacramento and beating up drunks whom they found in the streets and alleys; that they identified a picture of decedent as one of those they had beaten up and stated that one of them had kicked him and then lifted him up in a sitting position while the third struck him in the

abdomen. How long this occurred before decedent got back from skid row to the cabin on the river was not shown.

In *People* v. *Simonsen,* 107 Cal. 345, the court said at page 346 [40 P. 440]:

"The term '*corpus delicti*' means exactly what it says. It involves the element of crime. Upon a charge of homicide, producing the dead body does not establish the *corpus delicti.* It would simply establish the *corpus;* and proof of the dead body alone, joined with a confession by the defendant of his guilt, would not be sufficient to convict. For there must be some evidence tending to show the commission of a homicide, before a defendant's confession would be admissible for any purpose. Upon a charge of arson mere proof that a building was destroyed by fire does not establish the *corpus delicti,* and the defendant's confession of his guilt made extrajudicially in connection with such proof, is not sufficient to sustain a judgment of conviction. For there is no evidence of the commission of a crime other than the defendant's statements, and the law in the exercise of a jealous care over its subjects demands something more. To be sure, the appearance of the dead body, the nature of the wounds, the evidences of a struggle, the physical circumstances surrounding the affair, may furnish evidence of the *corpus delicti*—they may indicate that a crime has been committed, but there must be proof of the fact from some source other than the defendant's admissions."

The corpus delicti may be proved by circumstantial evidence, and the inferences that may reasonably be drawn therefrom. If a prima facie case is presented that the deceased met his death by means of an unlawful act of another, the evidence is sufficient. To prove a prima facie case of corpus delicti all that is required is to show a reasonable probability that a criminal act of another has been the direct cause of the death of the deceased. (*People* v. *Ives,* 17 Cal.2d 459, 463 [110 P.2d 408].)

Applying these well settled principles to the instant proceeding we are convinced that evidence adduced at the preliminary examination falls far short of indicating with a reasonable degree of probability that the criminal act of someone was the cause of death. The opinion of the autopsy surgeon that the rupturing of the decedent's liver was caused by a blow was not of sufficient substantiality to warrant the conclusion that any such blow was inflicted unlawfully. At most the autopsy surgeon's testimony was to the effect that

some external force had caused the rupture of the liver, but the mere rupturing of decedent's liver fails to prove that this was due to any unlawful or criminal act. The record of the preliminary examination shows that decedent came to the cabin at 7:30 p.m. in a very drunken condition; that he made no complaint and had no bruises upon him; that he asked for food and then went to his room where he was found dead at 6 o'clock the next morning. Disregarding, as we must, the extrajudicial statements of petitioners, there is no evidence, direct or circumstantial, from which it can reasonably be inferred that the death of decedent was caused by criminal means, and hence there is lacking one of the requisites of a prima facie case of homicide.

We are driven to the conclusion that the People failed to prove at the preliminary examination that a homicide had been committed and that the extrajudicial statements of petitioners were not admissible and could not be considered for any purpose. Therefore petitioners were held to answer without reasonable or probable cause and prohibition is an appropriate means to test the right of the People to proceed with the prosecution. (*Greenberg* v. *Superior Court,* 19 Cal.2d 319 [121 P.2d 713]; *Whitlock* v. *Superior Court,* 97 Cal.App.2d 26 [217 P.2d 158]; *Jackson* v. *Superior Court,* 98 Cal.App.2d 183 [219 P.2d 879].)

The Attorney General contends that the petitioners, by failing to raise the question of lack of reasonable and probable cause at the time of the first trial by way of motion to dismiss the information, are precluded from now raising this question.

Section 995 of the Penal Code states that the information must be set aside by the court in which the defendant is arraigned, upon his motion, if before the filing thereof the defendant had not been legally committed by the magistrate or had been committed without reasonable or probable cause. Section 996 states "If the motion to set aside the indictment or information is not made, the defendant is precluded from afterwards taking the objections mentioned" in section 995. Section 997 provides that if the motion is denied the defendant must immediately answer the information by demurring or pleading. Section 999a declares that an application for petition for a writ of prohibition predicated upon the ground of lack of probable cause for commitment must be filed within 15 days after denial of motion to set aside the information. In *People* v. *Linton,* 102 Cal.App. 608, 611 [283 P. 389], the court de-

clared that a trial court "has power to allow the plea to be withdrawn for the purpose of hearing and determining such a motion, but the exercise of that power necessarily is left to the discretion of the trial judge" (citing *People* v. *Ronsse,* 26 Cal.App. 100 [146 P. 65]). In *People* v. *Kellogg,* 6 Cal.2d 448, 454 [57 P.2d 1305], the court had this to say:

". . . Furthermore, the motion to set aside the information was made after the defendant entered his pleas. No request was made for permission to withdraw the pleas for the purpose of making the motion, and there is no showing of any abuse of discretion on the part of the trial court in denying the motion." (Citing *People* v. *Magee,* 60 Cal.App. 459, 462 [213 P. 513], and *People* v. *Linton,* 102 Cal.App. 608, 611 [283 P. 389].)

While it is true that the motion to withdraw the pleas for the purpose of making a motion to set aside the information came quite late, it was made after a trial in which the jury disagreed. This disagreement in effect placed the parties in the same position they were in before the trial. The trial judge who heard the evidence at the trial granted the motion to withdraw the pleas and we cannot say that he abused his discretion in so doing. The petition for prohibition was filed within 15 days after the denial of the motion to set aside the information and was therefore within the time specified in said section 999a of the Penal Code.

Let the peremptory writ issue as prayed for.

Van Dyke, P. J., and Peek, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 23, 1953. Shenk, J., Edmonds, J., and Spence, J., were of the opinion that the petition should be granted.