291 P.2d 929]

[S. F. No. 19347. In Bank. Dec. 29, 1955.]

JOHN ROGERS, Petitioner, v. THE SUPERIOR COURT
OF ALAMEDA COUNTY, Respondent.

( 3 )

4

William H. Coburn, Jr., for Petitioner.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, Arlo E. Smith, Deputy Attorney General, and J. F. Coakley, District Attorney (Alameda), for Respondent.

TRAYNOR, J.—Petitioner and L. C. Elliot were charged in one count of an information with posing as kidnappers for the purpose of extorting money (Pen. Code, § 210) and, in another count with attempted extortion. (Pen. Code, § 524.) Petitioner's motion under section 995 of the Penal Code to set aside the information on the ground that there is no reasonable or probable cause to believe that he committed the offenses charged was denied, and he now seeks prohibition to prevent further proceedings against him. (See Pen. Code, § 999a.) The District Court of Appeal issued the alternative writ, and the cause was thereafter transferred to this court.

On April 28, 1955, the 14-year-old daughter of Dr. Charles S. Bryan, Jr., disappeared. Late in the evening of April 28th or 29th, Dr. Bryan received a telephone call, and an unknown voice advised him that if he delivered $5,000 at a specified location his daughter would be released. When he asked for proof that the caller had his daughter another voice replied, "I ain't got no proof, it is just a chance you will have to take, bring it to Eighth and Market and she will be turned loose." The second voice also stated that "If there is any slip-ups it will be your daughter's life, not mine." In addition to the foregoing evidence, admissions made to the police by the defendants following their arrest were introduced at the preliminary hearing. Petitioner was arrested on May 17, 1955, and was not taken before a magistrate and arraigned until May 25, 1955. It was during this period, on May 21st, that he made the admissions to the arresting officer that connect him with the crime.

Petitioner contends that his commitment was based entirely on incompetent evidence and that the peremptory writ should therefore issue. He claims that without his admissions there was no evidence to connect him with the crime and that his admissions were inadmissible on the grounds that there was no competent proof of the corpus delicti and that they come within the exclusionary rule of *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905], since they were made during the period of his illegal detention in violation of section 825 of the Penal Code.

▮ The attorney general contends that the writ of prohibition cannot be used to review the rulings on the admissibility of evidence received by the magistrate at the preliminary examination, that to construe sections 995* and 999a† of the

---

*"The indictment or information must be set aside by the court in which the defendant is arraigned, upon his motion, in either of the following cases:

"If it be an indictment:

"1. Where it is not found, endorsed, and presented as prescribed in this code.

"2. That the defendant has been indicted without reasonable or probable cause.

"If it be an information:

"1. That before the filing thereof the defendant had not been legally committed by a magistrate.

"2. That the defendant had been committed without reasonable or probable cause."

†"A petition for a writ of prohibition, predicated upon the ground that the indictment was found without reasonable or probable cause or that the defendant had been committed on an information without reason-

Penal Code as providing for a full scale review of the rulings would be contrary to the purpose of the preliminary examination, and that the scope of review is simply to determine whether the magistrate has held the defendant to answer without reasonable or probable cause to believe a public offense has been committed with which the defendant is connected, and not whether the magistrate erred on questions of admissibility of evidence. We agree with this contention with this qualification: A defendant has been held to answer without reasonable or probable cause if his commitment is based entirely on incompetent evidence, and for the following reasons the peremptory writ will issue to prohibit further proceedings against him.

 A court has no jurisdiction to proceed with the trial of an offense without a valid indictment or information. (*Greenberg* v. *Superior Court,* 19 Cal.2d 319, 321 [121 P.2d 713]; Cal. Const., art. I, § 8; Pen. Code, § 682.) Prohibition is the proper remedy to prevent threatened action in excess of jurisdiction (*Harden* v. *Superior Court,* 44 Cal.2d 630, 637 [284 P.2d 9]; *Rescue Army* v. *Municipal Court,* 28 Cal.2d 460, 463 [171 P.2d 8]), and it is an appropriate means to test the right of the People to proceed with a prosecution when the validity of an indictment or information is challenged on the ground that the defendant has been indicted or committed without reasonable or probable cause. (*Greenberg* v. *Superior Court, supra,* 19 Cal.2d 319, 323; *Whitlock* v. *Superior Court,* 97 Cal.App.2d 26, 30 [217 P.2d 158]; *Jackson* v. *Superior Court,* 98 Cal.App.2d 183, 189 [219 P.2d 879]; *Hall* v. *Superior Court,* 120 Cal.App.2d 844, 850 [262 P.2d 351]; Pen. Code, §§ 995, 999a.)

 Section 871 of the Penal Code provides: "If, *after hearing the proofs,* it appears that either no public offense has been committed or that there is not sufficient cause to believe the defendant guilty of a public offense, the magistrate *must* order the defendant to be discharged, . . ." (Italics added.) "Sufficient cause" and "reasonable and probable cause" mean such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously

---

able or probable cause, must be filed in the appellate court within 15 days after a motion made under Section 995 of this code to set aside the indictment on the ground that the defendant has been indicted without reasonable or probable cause or that the defendant has been committed on an information without reasonable or probable cause, has been denied by the trial court. . . ."

entertain a strong suspicion of the guilt of the accused (*People* v. *Nagel,* 25 Cal.2d 216, 222 [153 P.2d 344]), but, "[t]he proof which will authorize a magistrate in holding an accused person for trial must consist of legal, competent evidence. No other type of evidence may be considered by the magistrate. The rules of evidence require the 'production of legal evidence' and the exclusion of 'whatever is not legal' (Code Civ. Proc., § 1825; . . .)." (*People* v. *Schuber,* 71 Cal.App.2d 773, 775 [163 P.2d 498].) ▆ An information that is based entirely on hearsay or incompetent evidence is unauthorized. (*In re Flodstrom,* 134 Cal.App.2d 871 [277 P.2d 101]; *Hall* v. *Superior Court,* 120 Cal.App.2d 844, 850 [262 P.2d 351]; *Dong Haw* v. *Superior Court,* 81 Cal.App.2d 153, 159 [183 P.2d 724]; *People* v. *Schuber, supra,* 71 Cal.App.2d 773, 777; *In re Schuber,* 68 Cal.App.2d 424, 425 [156 P.2d 944]; *In re Martinez,* 36 Cal.App.2d 687, 689 [98 P.2d 528]; see also *People* v. *Proctor,* 108 Cal.App.2d 739, 742 [239 P.2d 697]; 7 Cal.Jur., Criminal Law, § 120, p. 984.) ▆ Accordingly, when prohibition is sought under section 999a of the Penal Code, the writ will issue if no competent evidence was offered at the preliminary examination to support a reasonable belief that the offense charged was committed and that the defendant committed it.

Petitioner bases his contention that there was no competent proof of the corpus delicti and that therefore his admissions were not admissible against him, on the ground that since Dr. Bryan was unable to identify the voices he heard over the telephone, his testimony concerning the call is inadmissible hearsay. The testimony, however, to the effect that unknown persons posed as being able to obtain the release of Dr. Bryan's daughter for ransom, was offered merely to show that the conversation was held, and not to prove the truth of the statements made by the unidentified callers. Such evidence is not hearsay. (*People* v. *Kelley,* 22 Cal.2d 169, 176 [137 P.2d 1]; *People* v. *MacArthur,* 125 Cal.App.2d 212, 219 [270 P.2d 37]; *People* v. *Henry,* 86 Cal.App.2d 785, 789 [195 P.2d 478]; *People* v. *Klein,* 71 Cal.App.2d 588, 592 [163 P.2d 71]; *People* v. *Radley,* 68 Cal.App.2d 607, 609 [157 P.2d 426]; *People* v. *Gaertner,* 43 Cal.App.2d 388, 395 [110 P.2d 1002].) ▆ The testimony was not only competent, but it covered each of the essential elements of the crimes charged and supports a reasonable belief that these offenses were committed. We thus reach petitioner's basic contention that his

admissions were inadmissible under *People* v. *Cahan, supra,* 44 Cal.2d 434.

There can be no doubt that the admissions were made during a period of illegal detention. The arresting officer testified that he arrested defendant on the afternoon of May 17th. The conversation was held at about 10:15 a.m. on May 21st, or approximately 90 hours after the arrest. Even then defendant was not taken before the magistrate until May 25th, eight days after his arrest. ■ Section 825 of the Penal Code provides:

"The defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest, excluding Sundays and holidays; . . ."

There is nothing to indicate that a magistrate was unavailable on the Tuesday afternoon of the arrest or at sometime within the 48-hour period following it. Detention beyond the 48-hour statutory maximum without being taken before a magistrate is unquestionably illegal.*

In this state the admissibility of voluntary admissions or confessions made during illegal detention was first questioned in *People* v. *Devine,* 46 Cal. 45, 48. The contention that voluntary conversations with the police officer illegally detaining defendant were inadmissible, solely by reason of the illegal detention, was rejected as unfounded in principle or authority. Since that time, however, the federal courts have adopted the rule that a confession during a period of illegal detention is inadmissible (*McNabb* v. *United States,* 318 U.S. 332 [63 S.Ct. 608, 87 L.Ed. 819], rehearing denied, 319 U.S. 784 [63 S.Ct. 1322, 87 L.Ed. 1727]; *Upshaw* v. *United States,* 335 U.S. 410, 413 [69 S.Ct. 170, 93 L.Ed. 100]; "[A] confession is inadmissible if made during illegal detention due to failure promptly to carry a prisoner before a committing magistrate, whether or not the 'confession is the result of torture, physical or psychological.' " *United States* v. *Leviton,* 193 F.2d 848, 853), but, "[T]he rule of the McNabb case, . . . is not a limitation imposed by the Due Process Clause. [Citations.] Compliance with the McNabb rule is required in federal courts by [the Supreme Court] through its power of supervision over the procedure and practices of federal

---

· *Section 145 of the Penal Code provides: "Every public officer or other person, having arrested any person upon a criminal charge, who willfully delays to take such person before a magistrate having jurisdiction, to take his examination, is guilty of a misdemeanor."

courts in the trial of criminal cases." (*Gallegos* v. *Nebraska,* 342 U.S. 55, 63, 64 [72 S.Ct. 141, 96 L.Ed. 86].) ▮ A pretrial confession is admissible, so far as due process is concerned, if it is voluntarily made. (*Gallegos* v. *Nebraska, supra,* 342 U.S. 55, 65; *Brown* v. *Mississippi,* 297 U.S. 278, 285, 286 [56 S.Ct. 461, 80 L.Ed. 682] ; *Chambers* v. *Florida,* 309 U.S. 227, 236, 238 [60 S.Ct. 472, 84 L.Ed. 716] ; *Lisenba* v. *California,* 314 U.S. 219, 238 [62 S.Ct. 280, 86 L.Ed. 166].) There is no contention in this case that the admissions were involuntary.

▮ The test ordinarily used by state courts to determine the admissibility of a confession is, whether, considering all the circumstances, it was freely and voluntarily made without any inducement held out to the accused. (See 19 A.L.R.2d 1332, 1336-1346; 20 Am.Jur., Evidence, § 482.) ▮ Since the McNabb case, the state courts that have had occasion to reevaluate their test of admissibility as it applies to a confession made during illegal detention continue to treat delay in arraignment as only one of the factors to be considered in determining whether the statement was voluntarily made. Apparently none of the states following the rule excluding illegally obtained evidence have adopted the rule of the McNabb case; and we are not disposed to adopt it.

▮ There is a basic distinction between evidence seized in violation of the search and seizure provisions of the Constitution of the United States and the Constitution of California and the laws enacted thereunder, and voluntary statements made during a period of illegal detention. It may be true, as petitioner contends, that had he been arraigned within 48 hours and advised of his rights, he would not have volunteered to say anything. (*Cf. People* v. *Stroble,* 36 Cal.2d 615, 626, 627 [226 P.2d 330] ; and see *People* v. *Zammora,* 66 Cal. App.2d 166, 220 [152 P.2d 180].) Nevertheless, there is lacking the essential connection between the illegal detention and the voluntary statements made during that detention that there is between the illegal search and the evidence obtained thereby, or between the coercion and the confession induced thereby. The voluntary admission is not a necessary product of the illegal detention; the evidence obtained by an illegal search or by a coerced confession is the necessary product of the search or of the coercion. When questioned by arresting officers a suspect may remain silent or make only such statements as serve his interest; the victim of an illegal search, however, has no opportunity to select the items to be taken

by the rummaging officer (*State* v. *Sanford, State* v. *Ellis,* 354 Mo. 998, 1012 [193 S.W.2d 37, 38] concurring opinion of Hyde, J.; *State* v. *Guastamachio,* 137 Conn. 179 [75 A.2d 429, 431]; *cf., Milbourn* v. *State,* 212 Ind. 161 [8 N.E.2d 985, 986]; *Quan* v. *State,* 185 Miss. 513 [188 So. 568, 569]; 14 So. Cal.L.Rev. 477), and the victim of a coerced confession has been deprived of any choice. The record of the preliminary examination is devoid of any implication that the detention in this case was resorted to for the purpose of inducing the admissions, and petitioner makes no contention that they were not freely and voluntarily made. Accordingly, since there is no evidence that the illegal detention produced the admissions, we find the exclusionary rule inapplicable.

The alternative writ of prohibition is discharged, and a peremptory writ is denied.

Gibson, C. J., Shenk, J., Spence, J., and McComb, J. pro tem.,* concurred.

CARTER, J.—I dissent.

I agree with all of the opinion except that portion which holds that admissions or confessions of a defendant are admissible against him even though they are obtained while he is being illegally detained contrary to section 825 of the Penal Code, quoted in the majority opinion. I believe that we should follow the federal rule as announced by the United States Supreme Court (*Upshaw* v. *United States,* 335 U.S. 410 [69 S.Ct. 170, 93 L.Ed. 100]; *McNabb* v. *United States,* 318 U.S. 332 [63 S.Ct. 608, 87 L.Ed. 819]). One of the reasons for the provisions that a person arrested be promptly taken before a magistrate such as section 825 of the Penal Code is: ". . . to check resort by officers to 'secret interrogation of persons accused of crime.'" (*Upshaw* v. *United States, supra,* 335 U.S. 410, 412.) In *McNabb* v. *United States, supra,* 318 U.S. 332, 343, the court said after pointing out the rule that a person must be promptly charged after arrest: "The purpose of this impressively pervasive requirement of criminal procedure is plain. A democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process. Zeal in tracking down crime is not in itself an assurance of soberness of judgment. Disinterestedness in law enforcement does not alone

*Assigned by Chairman of Judicial Council.

prevent disregard of cherished liberties. Experience has there-
fore counseled that safeguards must be provided against the
dangers of the overzealous as well as the despotic. The awful
instruments of the criminal law cannot be entrusted to a
single functionary. The complicated process of criminal jus-
tice is therefore divided into different parts, responsibility for
which is separately vested in the various participants upon
whom the criminal law relies for its vindication. Legislation
such as this, requiring that the police must with reasonable
promptness show legal cause for detaining arrested persons,
constitutes an important safeguard—not only in assuring pro-
tection for the innocent but also in securing conviction of
the guilty by methods that commend themselves to a progres-
sive and self-confident society. For this procedural require-
ment checks resort to those reprehensible practices known as
the 'third degree' which, though universally rejected as
indefensible, still find their way into use. It aims to avoid
all the evil implications of secret interrogation of persons
accused of crime. It reflects not a sentimental but a sturdy
view of law enforcement. It outlaws easy but self-defeating
ways in which brutality is substituted for brains as an instru-
ment of crime detection. A statute carrying such purposes
is expressive of a general legislative policy to which courts
should not be heedless when appropriate situations call for
its application." And in the same vein William Wicker,
Dean of the University of Tennessee College of Law, says:
"The objectives of prompt-arraignment statutes include giv-
ing the suspect a preliminary hearing before a committing
official, informing him as to his constitutional privilege of
remaining silent, and affording him an opportunity to obtain
counsel and secure bail. Holding the suspect incommunicado
furnishes the setting most favorable for obtaining a confession.
A high percentage of improperly induced confessions occur
while the suspect is being held 'on ice' in violation of arraign-
ment statutes. This kind of violation of a duty towards a
suspect involves very little risk from the standpoint of the
lawless police officer. A prosecuting attorney will very seldom,
if ever, use a confession obtained by his investigating officer
and then prosecute the officer for illegally obtaining the
confession. Furthermore, even a successful criminal prosecu-
tion gives no redress to the victim. There are also obvious
practical obstacles to a convicted criminal's successfully main-
taining a civil suit for damages against an officer who illegally
detained him and thereby obtained the evidence to convict

him. If the victim dares to bring à civil action, he is not only faced with publicity and the risk of wasting time and money, but also with the risk of creating such a degree of ill-feeling between himself and the police that he may have reason to fear police retribution. If the victim obtains a judgment, the damages may be nominal. Even if the victim obtains a substantial judgment, it often cannot be collected out of a police officer's meager resources." (5 Vand.L.Rev. 507, 511.)

Our statutes (Pen. Code, §§ 145, 825) make it mandatory that a person arrested be taken before a magistrate without unnecessary delay, in no case less than two days and an officer violating the section is subject to imprisonment in the county jail not exceeding six months or fine not exceeding $500 or both. (Pen. Code, §§ 19, 145.) Unless admissions or confessions are excluded when obtained in violation of those provisions they will have little force. The situation is not different than the unlawful search and seizure cases (*People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905]). The distinction suggested by the majority opinion, that is, that an admission obtained during illegal detention is not necessarily the product of the illegal detention while the goods unlawfully seized are à necessary product of the illegal seizure, fails to take into account that the *purpose* of the speedy taking of a prisoner before a magistrate is to avoid confessions or admissions before a person is advised of the charges against him and his right to counsel, etc. Necessarily embraced within that purpose is the thought that such admissions obtained during illegal restraint will be coerced. Moreover, the purpose being as heretofore stated the Legislature has decided by making the requirement (Pen. Code, § 825) that admissions so obtained are necessarily a product of the illegal detention and the coercion inherent therein.

It appears to be the settled rule both in California and throughout the United States that where a statute provides that certain conduct shall be penalized, rights assertedly based on such conduct are void, of no effect, and hence unenforceable, even though the statute does not specifically so declare. (*City of Oakland* v. *California Const. Co.,* 15 Cal.2d 573 [104 P.2d 30]; *Berka* v. *Woodward,* 125 Cal. 119 [57 P. 777, 73 Am.St.Rep. 31, 45 L.R.A. 420]; *Adams* v. *Minor,* 121 Cal. 372 [53 P. 815]; *Meyer* v. *City of San Diego,* 121 Cal. 102 [53 P. 434, 66 Am.St.Rep. 22, 41 L.R.A. 762]; *Visalia Gas & E. L. Co.* v. *Sims,* 104 Cal. 326 [37 P. 1042, 43 Am.St.Rep. 105]; *Morill* v. *Nightingale,* 93 Cal. 452 [28 P. 1068, 27

14

Am.St.Rep. 207]; *Gardner* v. *Tatum,* 81 Cal. 370 [22 P. 880]; *Santa Clara Valley Mill & Lbr. Co.* v. *Hayes,* 76 Cal. 387 [18 P. 391, 9 Am.St.Rep. 211]; *Swanger* v. *Mayberry,* 59 Cal. 91; *Raymond* v. *Bartlett,* 77 Cal.App.2d 283 [175 P.2d 288]; *Salada Beach etc. Dist.* v. *Anderson,* 50 Cal.App.2d 306 [123 P.2d 86]; *County of Marin* v. *Messner,* 44 Cal. App.2d 577 [112 P.2d 731]; *Miller* v. *City of Martinez,* 28 Cal.App.2d 364 [82 P.2d 519]; *City of Los Angeles* v. *Watterson,* 8 Cal.App.2d 331 [48 P.2d 87]; *Hobbs, Wall & Co.* v. *Moran,* 109 Cal.App. 316 [293 P. 145]; *County of Shasta* v. *Moody,* 90 Cal.App. 519 [265 P. 1032]; *Noble* v. *City of Palo Alto,* 89 Cal.App. 47 [264 P. 529]; *Nielson* v. *Richards,* 75 Cal.App. 680 [243 P. 697]; *Stockton Plumbing etc. Co.* v. *Wheeler,* 68 Cal.App. 592 [229 P. 1120].) It should follow from the foregoing that since the detention here was in violation of express statutory authority, anything obtained by the prosecution from the defendant while subjected to such unlawful detention could not be relied upon in support of the charge against him.

For the foregoing reasons I would grant the relief prayed for.

Schauer, J., concurred.