Filed 11/10/15  Salvadori v. Super. Ct. CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DANTE KEITH SALVADORI,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SONOMA COUNTY,<br><br>        Respondent,<br><br>THE PEOPLE,<br><br>        Real Party in Interest. | A144504<br><br>(Sonoma County<br>Super. Ct. No. SCR-646719) |

Petitioner Dante Keith Salvadori, defendant below, petitions for a writ of prohibition and/or mandate that directs the Sonoma County Superior Court to dismiss a kidnapping to commit robbery count against him.  Petitioner contends the trial court improperly denied his motion, brought pursuant to Penal Code section 995,[1] to dismiss that count for lack of evidence that the asportation of the alleged victim was other than incidental to robbery.  We conclude the trial court properly denied his motion and deny the petition.

## BACKGROUND

In April 2014, the Sonoma County District Attorney filed a felony complaint alleging in seven counts that petitioner had violated numerous sections of the Penal Code based on his participation in an attack on, and attempted robbery of, Bolivar Medina on

---

[1] All further statutory references herein are to the Penal Code.

November 27, 2013.  The District Attorney did not allege that petitioner had participated in a kidnapping.

# I.

## *The Preliminary Hearing*

At the preliminary hearing before a magistrate, Bolivar Medina testified through an interpreter that in the early evening of November 27, 2013, he parked his truck on the street outside his Santa Rosa, California home and separated from those who had accompanied him about town.  Medina walked alone towards his house as he talked on his mobile phone.  When he had walked about ten feet to his driveway and stood about 30 feet from his house door, four pistol-armed men dressed in black, three of them wearing masks, approached him.  Medina did not know them.  The unmasked man threw him to the ground and all four jumped on top of him.  They said, " 'Where's the marijuana at?' " Medina replied that he did not know what they were talking about.

According to Medina, the four men then got him up off the ground, pointed guns at him and walked him to the door of his house.  They yelled at him to open it and not to move because they were going to kill him.  Medina unlocked the door, then tried to go in quickly and shut it behind him out of concern for his wife, son and stepson, who were inside.  However, the men hit him and forced their way into the house.  Medina threw one of the men onto the ground.  His wife came into the room and one of the attackers threw her down beside Medina.

Medina testified that the men were screaming things like, " 'Get down on the ground; don't move.' "  Asked if the men made demands for marijuana or any other property, Medina testified, "There was so much confusion and—and yelling and—and they were pulling—taking one thing and another; and I didn't—and they were asking for a lot of things from me.  They were yelling out, and they were all yelling just in—in English," a language Medina did not know.  The men hit him, including with their guns.

Medina also testified that as he wrestled on the ground with one of the men, a shot fired from the man's gun.  The men dispersed and Medina's wife was able to get up and

call the police. The men heard her and left. Later, a doctor counted 16 injuries to Medina's head. Medina required stitches and a three-day hospitalization.

Medina said that nothing was missing from his house except for a knife that police found in his driveway. He thought the men took his mobile phone because he could not find it after the attack. At trial, he identified petitioner as the unmasked man who attacked him.

Two police officers testified that they arrested petitioner later in the evening of November 27, 2013, after engaging in a high speed chase with a car in which he was a passenger. Police searched the car and discovered paperwork with petitioner's name on it, several cell phones and a two-way radio, various pieces of black clothing and a bag containing several pounds of marijuana.

The magistrate held petitioner to answer for five of the seven criminal counts pled against petitioner.

## II.

### *The Addition of a Kidnapping to Commit Robbery Count*

After the magistrate's ruling, the Sonoma County District Attorney filed a felony information that included a new "Count I." In it, the District Attorney alleged that defendant violated section 209, subdivision (b)(1) by unlawfully kidnapping and carrying away Medina to commit robbery, and made certain sentence enhancement allegations.

Petitioner moved pursuant to Penal Code section 995 to dismiss this new aggravated kidnapping count. Petitioner contended the evidence presented to the magistrate indicated that "Medina was allegedly moved from his driveway into his house where the men believed there was marijuana." After noting that the People had to prove that Medina's movement was other than merely incidental to the robbery to establish a kidnapping, he contended, "The marijuana which was the focus of the robbery was believed to be inside the home. Mr. Medina was moved into the house solely to reach his marijuana and facilitate the robbery. Thus, there was insufficient evidence presented at the preliminary hearing to support [the] charge . . . and Count I should be set aside."

3

At the hearing on petitioner's motion, the trial court found it particularly significant that Medina was scared to death; his attackers' actions, such as their being armed and some of them masked, indicated planning and sophistication; the facts of the case were similar to those in cases concluding kidnapping had occurred; Medina's wife was also thrown to the ground inside the house; Medina was pistol-whipped in the head; and Medina's attackers threatened to kill him. The court concluded that the movement of Medina was more than incidental to the robbery and denied petitioner's motion.

Petitioner subsequently filed this petition. We issued an alternative writ or order to show cause based on our preliminary conclusion that the trial court had erred in denying petitioner's section 995 motion. We directed the superior court to set aside and vacate its order and enter a new one granting petitioner's motion or, in the alternative, to show cause before this court why a peremptory writ of mandate should not be granted. We also stayed the proceedings below pending further order of this court. Subsequently, the People, as real party in interest, filed a return in which they argued that petitioner's movement of Medina was not merely incidental to robbery. We now conclude that the People are correct.

## DISCUSSION

In his petition, petitioner again contends Medina's movement was merely incidental to robbery "because the marijuana which was the target of the robbery was believed to be inside the home. Mr. Medina was moved into the house solely to reach his marijuana and facilitate the robbery. Thus, there was insufficient evidence presented at the preliminary hearing to support a charge of section 209[, subdivision] (b), and Count I should be set aside."

### I.

### *Standard of Review*

We first address our standard of review. Section 995 requires an information to be set aside if, among other reasons, the defendant "had been indicted without reasonable or probable cause." (§ 995, subd. (a)(1)(B).) In reviewing the trial court's ruling on a section 995 motion, we directly review the determination of the magistrate. (See *People*

4

*v. Barba* (2012) 211 Cal.App.4th 214, 227–228 (*Barba*).)  As the parties' legal citations indicate, generally we defer to the magistrate's evidentiary findings.  (See *People v. Laiwa* (1983) 34 Cal.3d 711, 718 [magistrate "is the finder of fact; the superior court . . . must draw every legitimate inference in favor of the information, and cannot substitute its judgment as to the credibility or weight of the evidence for that of the magistrate"]; *Rogers v. Superior Court* (1955) 46 Cal.2d, 3, 7 ["[a] defendant has been held to answer without reasonable or probable cause if his commitment is based entirely on incompetent evidence"]; *Salazar v. Superior Court* (2000) 83 Cal.App.4th 840, 842 [" 'an . . . information should be set aside only when there is a total absence of evidence to support a necessary element of the offense charged' "].)  " 'A reviewing court may not substitute its judgment as to the weight of the evidence for that of the magistrate, and every legitimate inference that may be drawn by the reviewing court from the evidence must be drawn in favor of the information.' " (*People v. Williams* (1988) 44 Cal.3d 883, 925.)

Neither party cites law that applies directly to these particular circumstances, where the trial court has denied a section 995 motion to dismiss a count added by the District Attorney *after* a magistrate has conducted a preliminary hearing.[2]  We also are to be deferential in such circumstances:  " '[W]hen a district attorney files an information in the superior court, containing an offense not included in the commitment order signed by the magistrate who conducted the preliminary examination on the initial complaint, the court must uphold the information if the evidence adduced at the preliminary hearing is sufficient to support the new or additional charge [citation].' [Citation.]  '. . . [T]he district attorney is not bound by the view of the committing magistrate; he [or she] is free to file an information charging the highest offense which any reasonable construction of the evidence adduced at the preliminary hearing admits [citation]. . . .  [I]f the defendant

---

[2]  The District Attorney is authorized to add such a count pursuant to section 739, which states in relevant part:  "When a defendant has been examined and committed . . . it shall be the duty of the district attorney . . . to file in the superior court of that county . . . an information against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed."

5

moves to dismiss the information under these circumstances, the question of his guilt or innocence is not before the court nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. On the contrary, the court should decide from the evidence adduced at the preliminary hearing, without attempting to reconcile conflicts or judge the credibility of the witnesses, whether there is reasonable or probable cause to believe the defendant guilty of the offense charged.' " (*Barba*, *supra*, 211 Cal.App.4th at pp. 227–228.)

## II.

### *The Elements of Aggravated Kidnapping*

"Any person who kidnaps or carries away any individual to commit robbery" is guilty of an aggravated kidnapping and subject to an indeterminate life sentence in state prison. (§ 209, subd. (b)(1).) This is only the case "if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in," the robbery. (§ 209, subd. (b)(2).)

The two requirements of kidnapping for robbery—movement of the victim that is not merely incidental to the commission of the robbery, and which substantially increases the risk of harm over and above that necessarily present in the crime of robbery itself, " 'are not mutually exclusive, but interrelated.' " (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152, quoting *People v. Rayford* (1994) 9 Cal.4th 1, 12, overruled on other grounds in *People v. Acosta* (2002) 29 Cal.4th 105, 118–120 & fn. 7.) In analyzing whether the movement was incidental to the commission of the underlying crime, we consider the " ' scope and nature' of the movement," including the actual distance moved, and "the context of the environment in which the movement occurred." (*Rayford*, at p. 12.) " 'Indeed, when in the course of a robbery a defendant does no more than move his victim around inside the premises in which he finds him . . . his conduct generally will not be deemed to constitute the offense proscribed by section 209. Movement across a room or from one room to another, in short, cannot reasonably be found to be asportation "into another part of the same county." ([§ 207].)' " (*Id.* at pp. 12–13, quoting *People v. Daniels* (1969) 71 Cal.2d 1119, 1140.) However, as our

6

colleagues in Division One of this appellate district have recently explained, " 'There is . . . no minimum distance a defendant must move a victim to satisfy' this element." (*People v. Simmons* (2015) 233 Cal.App.4th 1458, 1471 (*Simmons*).) Further, " '[t]here is no rigid "indoor-outdoor" rule by which moving a victim inside the premises in which he is found is *never* sufficient asportation for kidnapping for robbery while moving a victim from inside to outside (or the reverse) is *always* sufficient.' . . . Simply stated, 'the movement must be more than incidental *and* must increase the inherent risk of harm.' " (*Ibid.*)

## III.

### *Analysis*

Certainly, petitioner's actions increased the risk of harm to Medina, and petitioner does not contend otherwise. Instead, petitioner argues that Medina's movement was incidental to robbery. That is one inference, but not the only one that can be drawn from the evidence presented to the magistrate. For example, there is no evidence that petitioner believed the marijuana was inside Medina's home or even in Medina's possession. Medina merely testified that petitioner and others jumped him when he was outside, 30 feet from the door of his house, and demanded that he tell them the location of "the marijuana." Neither the attackers nor Medina indicated it was or might be in the house. Instead, Medina told his attackers that he did not know what they were talking about. There also is no evidence that once everyone was inside the house, Medina or his wife indicated that they knew anything about the marijuana their attackers sought, or that the attackers made any effort to search the house for marijuana. Instead, they continued to attack Medina, and attacked his wife as well.

The evidence is susceptible of an inference that petitioner moved Medina for reasons that were beyond that of facilitating a robbery of marijuana that was located inside his house. For example, a reasonable fact finder could conclude that petitioner did so to commit robbery—and additional crimes of violence against Medina and whoever else was inside the house, such as Medina's wife—by forcing Medina and/or his wife to reveal the location of the marijuana, which could have been kept elsewhere. Therefore,

7

the People met their burden of showing probable cause to believe defendant was guilty of aggravated kidnapping. (*Barba*, *supra*, 211 Cal.App.4th at pp. 227–228.)[3]

As the trial court concluded, these facts are similar to those discussed in *Simmons*. There, defendants, among other things, confronted two victims outside the home of one of them and moved them a significant distance up the front steps and into the home. (*Simmons*, *supra*, 233 Cal.App.4th at p. 1472.) The movement not only increased the likelihood of harm to these victims, but also "allowed defendants to engage in additional and more dangerous crimes by hiding their victims from public view and providing access to additional victims, and it increased the possibility of something going awry and somebody getting hurt." (*Ibid.*) This arguably is true for the circumstances of the present case as well.

Petitioner seeks to distinguish *Simmons* by arguing that "the defendants in *Simmons* did not have a specific target or object of the robbery" while here, petitioner "always intended to steal marijuana that was in the home." However, petitioner does not provide evidence to support this distinction. His arguments, and the cases he cites, are premised on his unsupported factual contention that he believed the marijuana was in Medina's house. (See *People v. Daniels*, *supra*, 71 Cal.2d at pp. 1130–1131 [defendants who moved victims around their houses caused "brief movements . . . solely to facilitate" their crimes of robbery and rape]; *People v. Washington* (2005) 127 Cal.App.4th 290, 299, 300 [concluding defendants' movement of bank employees inside a bank about 25 feet to a vault room did not justify an aggravated kidnapping charge]; *People v. Williams* (1970) 2 Cal.3d 894, 901–903 [robbers moving their victims around a gas station did not support a kidnapping conviction].) Therefore, he does not establish that Medina's movement was merely incidental to petitioner's efforts to rob him of marijuana stored somewhere in Medina's house.

---

[3] Of course, our conclusion has no bearing on whether a jury will ultimately convict or acquit petitioner of this offense; it merely means the People may proceed to prosecute petitioner for it.

8

In short, the trial court properly denied petitioner's section 995 motion to dismiss Count 1, the aggravated kidnapping charge.

## DISPOSITION

Petitioner's petition for a writ of prohibition and/or mandate is denied and our alternative writ or order to show cause is discharged.  Upon this decision becoming final, our previous order to stay proceedings below is vacated.

_____

STEWART, J.

We concur.

_____

RICHMAN, Acting P. J.

_____

MILLER, J.